## A01A0019. BROWN et al. v. MACHEERS.
(547 SE2d 759)

PHIPPS, Judge.

Lonnie Brown, individually and as administrator of his wife's estate, brought this wrongful death and medical malpractice action against Dr. Steven Macheers. The jury returned a verdict in favor of Dr. Macheers. Brown contends in this appeal that the trial court erred or abused its discretion in various rulings concerning examination of witnesses, admission of evidence, and jury instructions. We agree and reverse.

Mrs. Brown was born with a ventricular septal heart defect which, in her childhood, necessitated an operation known as a sternotomy. As an adult, she required another sternotomy, which was performed by Dr. Macheers. Due to the serious nature of Mrs. Brown's condition, complications arose during and after the operation, and she died from coagulopathy or excessive bleeding.

Evidence was presented showing that administration of the drugs Amicar or Aprotinin before surgery diminishes the risk of excessive bleeding, whereas ingestion of aspirin enhances such risk. Brown's medical expert, Dr. Webb, testified that because repeat sternotomies are generally prolonged procedures, and particularly because Mrs. Brown had taken aspirin when she was catheterized near the time of her surgery, Dr. Macheers committed professional negligence by not giving her Amicar or Aprotinin before the operation. Dr. Macheers testified that Aprotinin was contraindicated in this case because one of the primary risks to Mrs. Brown was blood clotting, and administration of Aprotinin has been known to result in the formation of blood clots and to cause death. Dr. Macheers's medical expert, Dr. Rosengart, testified that no applicable standard of care required Dr. Macheers to administer Amicar or Aprotinin in this case.

1. The trial court abused its discretion, Brown charges, by refusing to allow him to question Dr. Macheers about his reaction when Dr. Webb testified that Mrs. Brown had taken aspirin before her operation.

Brown maintains that Dr. Macheers registered surprise by hurriedly flipping through his papers when the question was asked, thereby indicating that he had not realized that she had taken the drug. Brown sought to question Dr. Macheers about his reaction, but counsel for Dr. Macheers objected. The court sustained the objection "as to drawing inferences from rattling papers." The court should not have sustained the objection on that ground, because " 'the conduct of a party . . . with respect to the case is the subject of legitimate com-

ment. . . .' [Cit.]"[1]

2. Brown contends that the court violated the fairness doctrine by refusing to require Dr. Macheers's attorney to introduce all parts of Dr. Webb's deposition relevant to a matter on which Dr. Webb was being impeached.

The fairness doctrine is based on OCGA § 9-11-32 (a) (5). In pertinent part, this statute provides that "[i]f only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts." This court, in *Wells v. Alderman*,[2] held that "[f]airness demands that no less than all portions relevant to that interrogated about be introduced *at the same time*."[3] The court in *Wells* explained that "[t]hese may fully explain any apparent conflict, or at least place the witness in better position to reconcile or explain it," and that "[a] statement out of context and without accompanying explanatory matter may be damaging and unfairly so."[4] Consequently, *Wells* concluded that where the plaintiff was cross-examining a witness about a statement he had made in a deposition, the defendant could require the plaintiff to introduce other relevant parts of the deposition during cross-examination, even though the statute also permits the defendant's later introduction of the other parts of the deposition.

While questioning Dr. Webb, Dr. Macheers's attorney observed that in his deposition Dr. Webb had not criticized Dr. Macheers for failing to use Amicar or Aprotinin prophylactically. Dr. Webb responded that, at the time, he was not aware that Mrs. Brown had ingested aspirin and that, in light of the presence of aspirin in her system, Dr. Macheers should have given her Amicar or Aprotinin. Invoking the fairness doctrine, Brown's attorney thereupon objected to counsel's not reading other parts of Dr. Webb's deposition during cross-examination. The court overruled the objection after Dr. Macheers's attorney stated that Brown's attorney could read other parts of the deposition on redirect examination. Under *Wells*, the court erred in so ruling.

3. Brown contends that the court abused its discretion by refusing to allow him to cross-examine Dr. Macheers about whether the cost of Aprotinin affected his decision not to administer it.

During his cross-examination of Dr. Kauten, who assisted Dr. Macheers in performing the operation, Brown's attorney elicited tes-

---

[1] *Findlay v. Griffin*, 225 Ga. App. 475, 477 (5) (484 SE2d 80) (1997).

[2] 117 Ga. App. 724 (162 SE2d 18) (1968).

[3] (Emphasis supplied.) Id. at 735 (10); see also *State Farm &c. Ins. Co. v. U. S. Fidelity &c. Co.*, 190 Ga. App. 220, 223 (4) (378 SE2d 400) (1989).

[4] Id.

timony showing that one reason physicians do not make extensive use of Aprotinin is that it is an expensive drug, and there is a risk that health care plans will deny reimbursement. However, Dr. Kauten explained that the expense of the drug is borne by the patient or hospital and does not affect the physician's fee. When Dr. Kauten testified that Aprotinin costs between $500 and $1,000 per patient, Brown's attorney asked if that was too much to spend for a drug that might have saved Mrs. Brown's life. Dr. Kauten responded in the affirmative, noting that effectiveness of the drug has not been proven.

Before Dr. Macheers testified, the trial court sustained defense counsel's objection to Brown's posing questions to Dr. Macheers concerning the expense of Aprotinin. The court ruled that the matter had been adequately covered during the cross-examination of Dr. Kauten and that questioning Dr. Macheers on the same subject would be repetitive. We cannot agree with this ruling. Cross-examination of Dr. Kauten concerning how the cost of the drug might have affected the defendant's decision not to prescribe it did not adequately substitute for questioning the defendant himself. By refusing to permit Brown's attorney to engage in any inquiry of Dr. Macheers on this highly relevant issue, the trial court committed a harmful abuse of discretion necessitating a reversal of the judgment.

4. Brown charges the court abused its discretion by refusing to allow him to establish bias on the part of Dr. Kauten by showing that in his deposition he was represented by the same attorneys who represented Dr. Macheers at trial.

The court ruled that Brown could adequately impeach Dr. Kauten for bias by showing that he and Dr. Macheers are partners in the same group practice. As Dr. Kauten's relationship to Dr. Macheers was thereby proved,[5] the court did not abuse its discretion.

5. Brown claims that the court abused its discretion in sustaining defense counsel's objection when Brown's attorney asked Dr. Macheers whether he could rule out that Aprotinin "could have had an impact, causally" on Mrs. Brown's excessive bleeding.

The court sustained the objection under the rule that "there can be no recovery in a wrongful death action based on medical negligence, where there is no showing to any reasonable degree of medical certainty that the patient's death could have been avoided."[6] In other

---

[5] See generally *Canada v. Shropshire*, 232 Ga. App. 341, 342 (501 SE2d 860) (1998) (citing OCGA § 24-9-68).

[6] *Dowling v. Lopez*, 211 Ga. App. 578, 580 (2) (440 SE2d 205) (1993); compare *Herr v. Withers*, 237 Ga. App. 420 (515 SE2d 174) (1999) (where both the plurality and dissent agreed that "reasonable degree of medical certainty" language should not be injected into a charge on causation in an ordinary negligence case).

words, the plaintiff must prove that the death of the patient proximately resulted from the defendant's negligence; a bare possibility of such result is insufficient.[7] Nonetheless, "[t]o recover damages in a tort action, a plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury."[8] Because Brown's attorney's question was relevant to the issue of cause in fact, the court erred in sustaining the objection.

6. Brown charges the court with abuse of discretion in ruling that he opened the door to admission of evidence concerning Mrs. Brown's health insurance coverage when he injected the issue of whether the cost of Aprotinin affected Dr. Macheers's decision not to prescribe it.

> Because evidence of insurance is so prejudicial, it should not be admitted unless it is clearly relevant. [Cits.] In this type of case, this means that evidence of insurance should not be admitted unless it is clearly impeaching (i.e., unless the testimony which purportedly "opens the door" is clearly inconsistent with the existence of insurance).[9]

Here, the only testimony that might have opened the door to admission of evidence concerning Mrs. Brown's insurance coverage was that given by Dr. Kauten. Because Kauten's testimony was not inconsistent with the existence of insurance coverage, Brown did not open the door to admission of evidence that she was covered by insurance.

7. Brown contends that the trial court erred in charging the jurors that if they found that there was "any doubt" as to where the preponderance of the evidence lay, it was their duty to resolve the issue against the party having the burden of proving it. Brown excepted to this charge on the ground that it could unduly confuse the preponderance of the evidence standard with the beyond a reasonable doubt standard in criminal cases.

The trial court's general charge on this subject was substantially the same as that found in the Council of Superior Court Judges Suggested Pattern Jury Instructions.[10] In this charge, the court accurately defined the term "preponderance" as meaning the "superior weight of the evidence" and instructed the jury that this "need not be enough to completely free the mind from reasonable doubt" but "must be sufficient to incline a reasonable and impartial mind toward one

---

[7] *Dowling v. Lopez*, supra.
[8] *Atlanta Obstetrics &c. Group v. Coleman*, 260 Ga. 569 (398 SE2d 16) (1990).
[9] *Luke v. Suber*, 217 Ga. App. 84, 86 (1) (456 SE2d 598) (1995).
[10] Suggested Pattern Jury Instructions, Vol. I: Civil Cases (3rd ed. 1991), pp. 3-4.

side of the issue, rather than the other." By reference to a "scales of justice" analogy, the court further explained that to satisfy the burden of proof by a preponderance of the evidence, there must be a definite tilt or incline of the scales to one side, and, "if the scales are evenly balanced or going back and forth with no real tilt, then the burden of proof by a preponderance of the evidence could not be satisfied. . . ." The part of the charge complained of by Brown directed the jury to resolve an issue against the party having the burden of proving that issue "[i]f you find that the evidence is evenly balanced on any issue in this case, *or if there is any doubt as to where the preponderance of the evidence lies*."[11] In another part of the charge, the court instructed the jury, "If you find that the weight of the evidence inclines your mind to one side of the issue rather than the other, *although some doubt may remain*, then you may still find that the burden of proving that issue has been satisfied."[12]

This charge accurately differentiated the preponderance of the evidence standard from the beyond a reasonable doubt standard. The complained-of portion of the charge instructed the jury to find against the plaintiff if there was any doubt as to whether he had carried his burden of proving his case by the degree of probability required by the preponderance standard. This did not have the effect of burdening the plaintiff with a requirement that he prove his case by the degree of certainty mandated by the reasonable doubt standard. The charge to the jury on the "any doubt" language, though arguably in conflict with the "some doubt" language in another part of the charge, did not constitute "prejudicial error."[13]

8. The trial court erred by refusing to give requested jury instructions that because a physician must bring to the exercise of his profession the requisite degree of care *and* skill, he may be held liable for failure to exercise either the required care *or* the required skill.

OCGA § 51-1-27 provides that a physician must "bring to the exercise of his profession a reasonable degree of care and skill." "A failure to exercise care and skill may be accomplished by a failure to exercise care only, or by a failure to exercise skill only, or it may be accomplished by a failure to do both."[14] The court in *Richards v. Harpe*[15] thus recognized that a charge in the conjunctive language of the statute is ambiguous in the absence of an additional explanation

[11] (Emphasis supplied.)

[12] (Emphasis supplied.)

[13] *Richards v. Harpe*, 42 Ga. App. 123, 126 (12) (155 SE 85) (1930).

[14] Id. at 125-126 (11); see *Goggin v. Goldman*, 209 Ga. App. 251, 252-253 (433 SE2d 85) (1993), and cits.

[15] Supra.

that the plaintiff may carry his burden of proof disjunctively. The trial court erred in refusing to give the additional explanation here.

9. The court did not err in refusing to charge the jury that a recovery would be authorized if it found that negligence of the defendant was the proximate cause "or a contributing proximate cause" of Mrs. Brown's death.[16]

The concept of "contributing proximate cause" was in issue in this case because the jury could have found that Mrs. Brown's death arose from her preexisting physical condition, or from negligence by Dr. Macheers, or from a combination of both. The trial court did not charge on contributing proximate cause as such. It instructed the jury that "[t]he fact that a patient has a physical condition which triggers an injury will not prevent such injury from being regarded as the proximate cause," and that plaintiff is precluded from recovering "damages for injuries which are not attributable to a wrongful act or omission of defendant but which result[ ] solely from the patient's original condition." Because the charge thereby adequately explained the concept of contributing proximate cause as applied to this case, we find no error in the court's refusal to give Brown's requested charge.

10. The court did not err in refusing to give Brown's requested jury charge, under the authority of *Gusky v. Candler Gen. Hosp.*,[17] that damage awards are not to be based on investments which can be purchased with proceeds from such awards.

Contrary to argument advanced by Brown, this issue was not injected into the case by Dr. Macheers's attorney in his cross-examination of Brown's economist. Our review of the transcript reveals that counsel cross-examined the witness concerning his methodology for computing the present value of Mrs. Brown's future earnings.

11. The remaining enumeration of error involves matters unlikely to recur on retrial and need not be reviewed.

*Judgment reversed. Smith, P. J., and Barnes, J., concur.*

DECIDED APRIL 11, 2001 —
RECONSIDERATION DENIED APRIL 30, 2001 ▮

*O'Neal, Brown & Clark, Manley F. Brown, John C. Clark, Jarome E. Gautreaux, Adams & Adams, Charles R. Adams III, Tracey L. Dellacona*, for appellants.

---

[16] See generally *Kammin v. O'Neal*, 206 Ga. App. 855, 857 (2) (426 SE2d 633) (1992) (physical precedent only), rev'd on other grounds, 263 Ga. 218 (430 SE2d 586) (1993).

[17] 192 Ga. App. 521, 524 (3) (385 SE2d 698) (1989).

*Hall, Booth, Smith & Slover, John E. Hall, Jr., Deborah S. Moses*, for appellee.