A04A1162. DASCOMBE v. HANLEY.
(606 SE2d 602)

PHIPPS, Judge.

William Dascombe sued Edward Hanley for injuries he sustained in a motor vehicle collision caused by Hanley, who was intoxicated at the time of the collision. Dascombe sought compensatory damages, medical expenses and punitive damages. The jury awarded Dascombe $10,000 in compensatory damages, and determined that punitive damages were not appropriate. Dascombe filed a motion for judgment notwithstanding the verdict or, in the alternative, motion for additur or new trial. That motion was denied, and Dascombe appeals.

Dascombe claims that Hanley's closing argument was improper and prejudicial and that, as a result, a mistrial was warranted. He also claims that the trial court erred by charging the jury on preexisting condition and on the duty to mitigate damages. Finally, Dascombe claims that the trial court erred by denying his motion for directed verdict. For reasons that follow, we affirm.

1. Dascombe challenges the following portion of Hanley's closing argument:

> And I am going to ask you, Ladies and Gentlemen, to consider everything you've heard about this drinking and all of that, put aside the beer bottles and the drunk driver comments and all that, consider the evidence you've heard in the case, whether there's any pattern to this at all, and decide if this is something that you want to award damages against him that's going to follow him the rest of his life, for making one mistake —

At that point, Dascombe's counsel objected that the argument was inappropriate and merely intended to invoke sympathy. The court did not rule on the objection, but stated, "I think he's concluded his argument," to which Hanley's counsel responded, "I have, Your Honor." Counsel then argued that Hanley had opened the door to the admission of evidence about insurance coverage by claiming that the verdict would follow him for the rest of his life when, in fact, insurance would cover a judgment up to $300,000. The trial court refused to allow any evidence of insurance. The court did not give a curative instruction, but did later charge the jury that it was to consider the facts objectively, without sympathy for either party.

In ruling upon objections to or motions resulting from improper argument of counsel, the trial court is vested with a sound discretion, and this court will not grant a new trial unless there has been a manifest abuse of that discretion.[1]

(a) Dascombe claims that he should have been allowed to introduce evidence of insurance coverage because Hanley's closing argument implied an inability to pay and was therefore inconsistent with the existence of insurance.

> Because evidence of insurance is so prejudicial, it should not be admitted unless it is clearly relevant. In this type of case,

---

[1] *Hartford Fire Ins. Co. v. Rowland*, 181 Ga. App. 213, 218 (3) (351 SE2d 650) (1986).

this means that evidence of insurance should not be admitted unless it is clearly impeaching (i.e., unless the testimony which purportedly "opens the door" is clearly inconsistent with the existence of insurance).[2]

It could be asserted that Hanley's argument might have implied to the jury that he might spend the rest of his life trying to pay an award of damages. It is just as likely, however, that the argument implied to the jury that the stigma of a judgment or award of damages would follow Hanley for the rest of his life.

Hanley's argument was not clearly inconsistent with the existence of insurance and therefore did not open the door to admission of evidence that he was covered by insurance.[3]

(b) Dascombe also claims that Hanley's argument was improper because it injected Hanley's inability to pay and pointed out the financial disparity between the two men. He argues that a new trial is warranted.

Dascombe relies on several cases involving improper arguments: *Adams v. Camp Harmony Assn.*;[4] *Superior Paving v. Citadel Cement Corp.*;[5] and *John J. Woodside Storage Co. v. Reese.*[6] During closing arguments in *Adams*, defense counsel argued that a verdict would "wipe out" Camp Harmony.[7] Although the trial court gave a curative instruction after the objectionable argument, it denied a motion for mistrial. That decision was reversed because, under the particular facts of that case, defense counsel's argument created a prejudicial slant against the plaintiffs that could not be erased by curative instructions.[8]

In *Superior Paving*, plaintiff's counsel informed the jury during opening arguments that defendant Superior Paving had no assets, thereby injecting its financial condition into the case in an attempt to obtain a personal judgment against its president, who was also a defendant.[9] This court determined that counsel's statement, which was not supported by the evidence, was extremely prejudicial to Superior Paving's president.[10] Because the case was being reversed on other grounds, the court did not determine whether the trial

---

[2] (Citation omitted.) *Brown v. Macheers*, 249 Ga. App. 418, 421 (6) (547 SE2d 759) (2001).

[3] See id.

[4] 190 Ga. App. 506 (379 SE2d 407) (1989).

[5] 145 Ga. App. 6 (243 SE2d 287) (1978).

[6] 105 Ga. App. 602 (125 SE2d 556) (1962).

[7] *Adams*, supra at 507 (1).

[8] Id. at 508.

[9] *Superior Paving*, supra at 7 (3).

[10] Id. at 8.

court's curative instructions were sufficient to overcome the statement's prejudicial effect.

In *Reese*, this court determined that plaintiff's closing argument was so prejudicial as to require a new trial. Plaintiff's counsel stated that the defendants were able to pay for an airplane ticket for a certain witness and asked the jury if it thought that the *plaintiff* could buy the witness's ticket. This court held that the argument, which was not based upon any issue in the case, illustrated the financial disparity between the plaintiff and the defendants, and the defendants' ability to pay, and was therefore prejudicial to the defendants.[11]

Although not the same as the improper arguments in the cases relied upon by Dascombe, the argument of Hanley's counsel at least warranted a curative instruction. The jury may have concluded from the argument that Hanley would spend the rest of his life trying to pay a large monetary award.

Pursuant to OCGA § 9-10-185,

[w]here counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds.

Here, the court did not take any action in response to the objection of Dascombe's counsel. Because Hanley's counsel had completed his closing argument, it would not have made sense to instruct him to desist from further improper argument. But the court should have instructed the jury not to consider whether or how a damage award might affect Hanley. "The absence of either corrective action flies in the face of the mandatory language of OCGA § 9-10-185, and is error."[12]

As a remedy for the improper argument, Dascombe sought to introduce evidence of Hanley's insurance. As we ruled in Division 1 (a), that was not an available remedy. Because Dascombe did not request a curative instruction, ask the court to rebuke Hanley's counsel or move for mistrial, his only avenue on appeal is to claim that the argument was improper and that the trial court erred in failing "promptly to require opposing counsel to desist from such argument,

---

[11] *Reese*, supra at 604 (6).

[12] (Citations omitted.) *All Risk Ins. Agency v. Southern Bell Tel. &c.*, 182 Ga. App. 190, 193 (4) (355 SE2d 465) (1987).

this being in effect what counsel had asked."[13] As noted previously, this remedy would not have been appropriate because Hanley's counsel had completed his closing argument when Dascombe's counsel objected. Although Dascombe now seeks a new trial as a result of the improper argument, we will not reverse the trial court for not taking an action that was not requested at trial.[14]

2. Dascombe claims that the trial court erred by charging the jury on preexisting condition. He argues that the evidence presented at trial did not warrant the charge.

The complained-of charge, which is a suggested pattern jury instruction,[15] is as follows:

> I further charge you that no plaintiff may recover for injuries or disabilities which are not connected with the act or omissions of the defendant in this case. There can be no recovery for a particular plaintiff for any injury or disability which was not proximately caused in the incident in question. If you should find that at the time of this incident plaintiff had any physical condition, ailment, or disease which was becoming apparent or was dormant, and if you should find that the plaintiff received an injury as a result of the negligence of the defendant, and that the injury resulted in any aggravation of a condition already pending, then the plaintiff could recover damages for aggravation of a preexisting condition.

Dascombe argues that the charge was harmful because it led the jury to award damages for aggravation of a preexisting injury instead of awarding him damages for the entire injury.

> A trial court has a duty to charge the jury on the law applicable to issues which are supported by the evidence. If there is even slight evidence on a specific issue, however, it is not error for the court to charge the jury on the law related to that issue. Furthermore, the evidence supporting the charge does not have to be direct evidence. It is enough if there is something from which a jury could infer a conclusion

---

[13] (Citation and punctuation omitted.) *Garner v. Victory Express*, 264 Ga. 171, 173 (2) (442 SE2d 455) (1994).

[14] See id.; but see *Atlantic Coast Line R. Co. v. McDonald*, 103 Ga. App. 328, 338-340 (3) (119 SE2d 356) (1961).

[15] See Georgia Suggested Pattern Jury Instructions Volume I: Civil Cases, No. 66.504.

regarding the subject.[16]

Dr. Frank Lafranchise, a neurologist, treated Dascombe five days after the collision. Lafranchise ordered an MRI scan which revealed that Dascombe had osteophytes (bone growth in an area where normal bone growth is not found) in his cervical spine. He testified that he did not think the osteophytes were caused by the collision because it takes longer than a few days for them to form. He also testified that, but for the collision, the osteophytes would have remained asymptomatic. Lafranchise testified that Dascombe's "nerve root is being irritated by a combination of herniated disc and trauma of the accident when the nerve — the nerve had to be — probably got traumatized by the osteophytes that were preexistent."

Dascombe later went to Dr. Edward Allcock, a doctor of osteopathic medicine. Allcock testified that the disc abnormalities he had identified in Dascombe could be caused by the wear and tear of everyday living and that he had seen patients with similar problems who had not been involved in trauma.

Based on the doctors' testimony, the jury could have concluded that Dascombe had osteophytes prior to the collision and that his preexisting condition (the presence of the osteophytes) was aggravated by the collision. Or the jury could have concluded that Dascombe might have experienced the same problems even without the collision. Thus, the trial court did not err by charging the jury on preexisting condition.[17]

3. Dascombe claims that the trial court erred by charging the jury on the duty to mitigate.

The collision occurred on January 22, 2000. At trial, which began on July 17, 2003, Dascombe testified that he had experienced pain from the trapped nerve in his neck every day since the collision. Dascombe testified that he had been to see a doctor six times during that period and that one of those visits was for a regular physical examination. On Dascombe's second and last visit to Lafranchise in May 2000, Lafranchise recommended an EMG test. Dascombe did not have an EMG test at that time because he said that he "was in a state of denial" with respect to his injuries.

In March 2001, Dascombe went to Allcock. At that time, Dascombe had an EMG study performed. Allcock recommended the use of home cervical traction and physical therapy. Allcock did not see

---

[16] (Citations and punctuation omitted.) *Thrash v. Rahn*, 249 Ga. App. 351-352 (1) (547 SE2d 694) (2001).

[17] See id. at 352.

Dascombe again until approximately a year and a half later. In his notes, Allcock had written that Dascombe had not undergone any physical therapy.

Because there is some evidence that Dascombe may have failed to obtain available treatment for his injuries, the court did not err by charging the jury on the duty to mitigate damages.[18]

4. Dascombe sought a directed verdict on the issue of whether he would suffer permanent pain and suffering as a result of the collision. He argued that Hanley had failed to refute expert testimony that he is permanently disabled because of a trapped nerve in his neck.

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demand a particular verdict."[19]

Although Hanley did not present any expert testimony, there was sufficient evidence to preclude a directed verdict on the issue of permanent pain and suffering. Dascombe testified that, after the collision, he continued to perform the same work he had previously performed; he is not under any work restrictions imposed by a medical doctor; the hours of his work and the quality of his work have remained the same; he continues to play golf and tennis once a month; he runs every day and plays the piano once a week; he has traveled to Switzerland, Italy, Canada, Florida and North Carolina; he has been hiking and rock climbing; and he has not missed any time from work except for his six visits to medical doctors.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 8, 2004.

*Savage, Turner, Pinson & Karsman, Brent J. Savage, Kathryn H. Pinckney*, for appellant.

*Brennan, Harris & Rominger, Mason White, James D. Kreyenbuhl, A. Martin Kent*, for appellee.

---

[18] See *Findlay v. Griffin*, 225 Ga. App. 475, 476 (2) (484 SE2d 80) (1997).

[19] (Citation and punctuation omitted.) *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821 (1) (354 SE2d 6) (1987).