## A05A0847. SNIDER et al. v. BASILIO.
(623 SE2d 521)

JOHNSON, Presiding Judge.

This is an appeal from a directed verdict granted to a doctor in a medical malpractice action. Because there is some evidence that the doctor violated the standard of care, the trial court erred in granting the doctor a directed verdict, and we therefore reverse that ruling.

On Saturday, February 7, 1998, Rebecca and Matthew Snider's six-month-old son Luke was vomiting and had a fever of 103.6 degrees Fahrenheit. Ms. Snider took Luke to Pediatric After Hours in Macon, Georgia, where Dr. Harold Sims diagnosed the child as having a stomach virus. The next day, Sunday, February 8, at about 4:30 in the afternoon, Ms. Snider called the office of Florida Basilio, M.D., the family pediatrician. Dr. Basilio's office is located in Columbus, Georgia, where the Snider family had lived until a temporary job transfer required them to move to the Macon area.

The call was answered by Magelie DeVera, a nurse employed by Dr. Basilio's professional corporation. DeVera graduated from nursing school in the Philippines in 1993, but she has failed the Georgia nursing examination three times, and does not have a nursing license in Georgia or in any other state. During the telephone call, Rebecca Snider reported Luke's fever and vomiting. She also reported that Luke had been seen by Dr. Sims in Macon, who had diagnosed Luke with a stomach virus. DeVera advised Snider to mix Sprite or ginger ale with Pedialyte and start Luke on a diet of bananas, rice, applesauce and toast.

On Monday, February 9, at approximately 3:00 a.m., Ms. Snider called again and spoke with Dr. Basilio, who allegedly said that Luke was probably hungry and to try to give him a bottle. At 8:00 that same morning, the mother again called Dr. Basilio, who allegedly said that Ms. Snider could bring the child to the doctor's office in Columbus. Instead, Ms. Snider took Luke to a hospital emergency room in Macon. Luke was eventually diagnosed with bacterial meningitis, which ultimately caused brain damage and rendered him a quadriplegic.

The Sniders sued Dr. Sims, Pediatric After Hours, Dr. Basilio, Dr. Basilio's professional corporation, and DeVera. The case proceeded to a jury trial. At the close of the plaintiff's evidence, the trial court directed a verdict in favor of Dr. Basilio in her individual capacity.

The remaining defendants — Dr. Sims, Pediatric After Hours, DeVera and Dr. Basilio's professional corporation — presented their evidence. During his cross-examination of the final defense expert, the Sniders' attorney asked if the expert had previously given a deposition in a case filed against him as a defendant. Based on the

question, the trial court granted a mistrial. The Sniders appeal from the directed verdict granted to Dr. Basilio.

1. The Sniders assert that the trial court erred in granting a directed verdict to Dr. Basilio. We agree.

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demand a particular verdict."[1] Dr. Basilio argues that a directed verdict was proper in this case because there is no evidence that she individually committed any act of malpractice. In support of this argument, however, she misconstrues the testimony of the Sniders' two expert witnesses, both of whom testified that Dr. Basilio had violated the medical profession's standard of care by permitting DeVera, an unlicensed nurse, to take calls from and give advice to patients without consulting Dr. Basilio.

The first expert, Dr. Steven Shore, testified that it was a violation of the standard of care to allow the nurse to answer calls on the weekend because the symptoms reported were very serious and the nurse, if not directing the child to get immediate care, should at least have spoken to her supervising physician, who could then have made the decision about immediate care. He further testified that it would be unusual to use an unlicensed nurse for call coverage, and if an unlicensed nurse were so used that the bond between the nurse and supervising doctor would have to be much stricter, with frequent calls to the doctor.

The second expert, Dr. Joseph Simon, likewise testified that to allow an unlicensed nurse to take first call coverage on weekends for a doctor violated the standard of care unless, for each call where the child is allowed to remain home, the doctor is immediately called. He also testified that, assuming Dr. Basilio had not been called, the standard of care was violated in this case.

It is undisputed that DeVera did not call Dr. Basilio after advising Ms. Snider about how to treat her child. Moreover, both Dr. Basilio and DeVera testified that the doctor gave the unlicensed nurse the authority to advise patients and dispose of care without consulting the doctor as long as the nurse was comfortable with her decision. Only if DeVera felt she could not handle a situation was she required to contact Dr. Basilio.

In support of her contention that there is no evidence that she committed any act of individual malpractice, Dr. Basilio not only ignores her own testimony that she gave such authority to DeVera,

---

[1] (Punctuation and footnote omitted.) *Dascombe v. Hanley*, 270 Ga. App. 355, 361 (4) (606 SE2d 602) (2004).

but she also misrepresents the experts' testimony by claiming that their opinions about allowing an unlicensed nurse to take patient calls were premised on the fact that DeVera was an employee of the professional corporation. Thus, Dr. Basilio reasons, the experts' concerns were with the corporation, not with the doctor individually.

While it is true that DeVera was employed by the corporation, that fact was not a critical premise of the experts' opinions that it is a violation of the standard of care to allow an unlicensed nurse to answer patient calls without consulting the doctor. It is clear from a reading of their testimony that the experts were referring to the supervising doctor, not the professional corporation, when opining about the impropriety of the decision to let an unlicensed nurse take patient calls.

Obviously, the decision to give DeVera such autonomy was made by Dr. Basilio, not by the corporate structure. Only the doctor supervising the nurse, not the professional corporation established by the doctor for the purpose of doing business, could have given the nurse such responsibility. In fact, Dr. Basilio plainly admitted during her testimony at trial that she alone is the one who gave DeVera the responsibility to take first call coverage for patients on the weekend in question. Dr. Basilio cannot now shield herself from individual liability for her own acts simply because she has established a professional corporation.[2]

"In determining whether the evidence warrants denial of a directed verdict motion, the evidence must be construed most favorably to the party opposing the motion, and the standard used to review the grant or denial of a directed verdict is the 'any evidence' test."[3] In this case, the "any evidence" test is satisfied by the testimony that Dr. Basilio personally authorized DeVera to take patient calls like the one from Ms. Snider and to give advice without consulting the doctor so long as she was comfortable with her decision, and by the expert testimony that giving an unlicensed nurse such responsibility violates the standard of care. Because there is some evidence that Dr. Basilio violated the standard of care, the trial court erred in granting her a directed verdict.

2. The Sniders contend that the trial court erred in preventing them from offering testimony that DeVera has failed the Georgia State Board of Nursing licensing examination. This court has held, however, that a trial court did not err in refusing to allow evidence

[2] OCGA § 14-2-622 (b) (shareholder of a corporation not personally liable for acts or debts of corporation, but may become personally liable by reason of her own acts or conduct).

[3] (Punctuation and footnote omitted.) *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 322 (5) (486 SE2d 851) (1997).

that a doctor had failed a board examination because such evidence has little relevance to the issue in a medical malpractice case of whether the doctor met the requisite standard of care.

> A physician's inability to pass certification and licensure examinations does not make probable his negligent performance of a specific procedure. Such evidence has little if any relevance to the issue of whether the physician complied with the standard of care required in his treatment in a given case.[4]

While the instant case involves a nurse's inability to pass a licensing examination rather than a doctor's inability, we agree with the trial court that the same rationale applies here. That is, the ultimate issue as to DeVera is whether she complied with the standard of care required in this case, and her inability to pass a licensing examination has little if any relevance to that issue. Moreover, we note that while the trial court prohibited evidence that DeVera had not passed the examination, it nevertheless allowed evidence that she was not in fact a licensed nurse. Since DeVera's inability to pass the licensing examination has no real relevance to the standard of care issue, we find no abuse of discretion in the trial court's refusal to allow evidence of such inability.[5]

3. The Sniders claim that the trial court improperly restricted their right to cross-examine the final defense expert, Dr. Michael Radetsky. While questioning Dr. Radetsky about several depositions he had given in prior cases, the Sniders' attorney asked him: "And of those five or six depositions one of them was in a case which had been filed against you as a defendant, correct?" Before the expert could answer, the defendants objected and moved for a mistrial, which the trial court granted. The Sniders contend that the trial court erred in prohibiting evidence that the expert had been a defendant in a prior case because it is relevant to show his bias.

While it appears that the granting of a mistrial during the testimony of the final defense expert was an unnecessarily extreme reaction by the trial judge since any harm by the question could have been cured with an instruction to the jury, we nevertheless find no abuse of discretion in the judge's finding that the question was improper. This court has previously held that a trial court does not abuse its discretion in preventing evidence that an expert witness

---

[4] (Citations and punctuation omitted.) *Williams v. Mem. Med. Center*, 218 Ga. App. 107, 108 (1) (460 SE2d 558) (1995).

[5] Id.

had been named as a defendant in an unrelated malpractice action because such evidence does not necessarily show bias and is not unequivocally relevant to the case in which the expert is testifying.[6]
*Judgment reversed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED OCTOBER 24, 2005 —
RECONSIDERATIONS DENIED NOVEMBER 14, 2005 — 

*Taylor, Harp, Callier & Morgan, John S. Taylor, John A. Harp, Jefferson C. Callier*, for appellants.
*Hatcher, Stubbs, Land, Hollis & Rothschild, Robert C. Martin, Jr., Joseph H. Chambless*, for appellee.

[6] See *Pavamani, P.C. v. Cole*, 215 Ga. App. 594, 595 (2) (451 SE2d 795) (1994); *Johnson v. Wills Mem. Hosp. &c.*, 178 Ga. App. 459, 461 (3) (343 SE2d 700) (1986) (physical precedent only).
[1] Adams was acquitted of aggravated sodomy, OCGA § 16-6-2, sexual battery, OCGA § 16-6-22.1 (b), and possession with intent to distribute marijuana, OCGA § 16-13-30 (j).