## A07A2265. WEST v. BREAST CARE SPECIALISTS, LLC et al.
(659 SE2d 895)

ADAMS, Judge.

Margaret West filed a medical malpractice action against Breast Care Specialists, LLC (BCS) and Elizabeth P. Steinhaus, M.D., arising out of Steinhaus's treatment of a wound from a biopsy performed by the doctor. Steinhaus performed a lumpectomy on West in 2001 in the course of treating her for breast cancer. West's post-operative recovery from this surgery was uneventful. But she subsequently developed a mass under her lumpectomy scar, and Steinhaus performed a biopsy in September 2002 to determine if a recurrence of breast cancer had occurred. The biopsy demonstrated that the mass was actually scar tissue, which can sometimes form after a lumpectomy. The surgical wound from the biopsy was extremely slow to heal, however, and West visited Steinhaus on several occasions for treatment.

On November 12, 2002, Steinhaus placed pieces cut from a latex surgical glove into the wound to facilitate drainage. Although the latex drain initially extended outside the wound, it subsequently receded deep inside and remained there, unbeknownst to West or her doctors. The parties presented conflicting evidence at trial as to the wound's subsequent progress, but it is undisputed that it remained unhealed to some extent in September 2003, when Steinhaus referred West to a wound clinic for further treatment. West underwent daily treatment at the clinic, including sessions in a hyperbaric oxygen chamber. During her third visit, the treating physician unpacked the wound and discovered the latex material Steinhaus had inserted there ten months earlier.

West's complaint alleged that Steinhaus and BCS were negligent in inserting the latex material in lieu of a true drain; in failing to suture or otherwise affix the latex so that it would not retract into the wound; and in failing to properly probe the wound and locate the missing drain. The jury ultimately returned a verdict in favor of BCS and Steinhaus on these claims, and West appeals following the denial of her motion for new trial.

West asserts on appeal that the trial court erred (1) in refusing to give her requested charge on the exercise of the requisite skill and care required of a physician; (2) in denying her motion to strike the testimony of the defendants' expert, William Barber, M.D., on standard of care issues; and (3) in partially granting the defendants' motion for directed verdict on damages.

1. The trial court charged the jury under OCGA § 51-1-27 that a physician must "bring to the exercise of the profession a reasonable degree of care and skill." West requested an additional charge stating, "[f]ailure to exercise care and skill may be accomplished by failure to

exercise care only, or by failure to exercise skill only, or by failure to do both." She based this requested charge on language found in *Richards v. Harpe*, 42 Ga. App. 123, 125-126 (11) (155 SE 85) (1930). The trial court denied West's request, and instead charged the full pattern jury charge on the issue,[1] which does not include the "either/or" language West requested. She asserts the trial court erred in denying her request, because the charge as given effectively increased her burden of proof.

The conjunctive phrasing of the words "care" and "skill" in the charge comes directly from OCGA § 51-1-27, and has been employed repeatedly by our appellate courts in defining the requisite standard of proof in a medical malpractice action. See, e.g., *Johnson v. Riverdale Anesthesia Assoc.*, 275 Ga. 240, 241-242 (1) (563 SE2d 431) (2002) (to establish medical malpractice, it is axiomatic that evidence "must show a violation of the degree of care and skill required of a physician") (punctuation and footnote omitted); *Cannon v. Jeffries*, 250 Ga. App. 371, 372 (1) (551 SE2d 777) (2001) (in medical malpractice claim plaintiff must show doctor breached duty by failing "to exercise the requisite degree of skill and care") (citation omitted); *Killingsworth v. Poon*, 167 Ga. App. 653, 655 (307 SE2d 123) (1983) (to overcome presumption, patient must offer expert medical testimony that defendant-doctor failed to exercise requisite "degree of care and skill") (citations omitted).

Moreover, "[i]t is well established that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Punctuation and footnote omitted.) *Fowler v. Atlanta Napp Deady*, 283 Ga. App. 331, 335 (2) (641 SE2d 573) (2007).[2] When viewed in its entirety, the trial court's charge in this case gave a full and correct statement of the law regarding the care and skill required of a physician and the proof required at trial to support a claim of medical malpractice. See *Zwiren v. Thompson*, 276 Ga. 498, 503 (578 SE2d 862) (2003) (establishing the language of pattern charge addressing standard for establishing proximate cause in medical malpractice action); *Beach v. Lipham*, 276 Ga. 302, 306 (3) (578 SE2d 402) (2003) (establishing language of charge dealing with presumption that physician performed in ordinarily skillful manner); *Hartman v. Shallowford Community Hosp.*, 219 Ga. App. 498, 500-501 (2) (466 SE2d 33) (1995) (approving language of charge in context of recharging a jury).

---

[1] Suggested Pattern Jury Instructions, Vol. I: Civil Cases (4th ed. 2004), § 62.300.

[2] In fact, in *Richards v. Harpe*, upon which West based her request for the "either/or" language, the Court considered the remainder of the charge in holding that the failure to include such language was not reversible error. 42 Ga. App. at 125-126 (11).

Further, "[i]n order for a trial court's jury instruction to constitute reversible error, the party challenging the instruction must establish that the instruction was both legally erroneous and harmful." (Citation omitted.) *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 285 Ga. App. 22, 24 (1) (645 SE2d 536) (2007). See also *Buford-Clairmont Co. v. RadioShack Corp.*, 275 Ga. App. 802, 806 (4) (622 SE2d 14) (2005); *Wozniuk v. Kitchin*, 229 Ga. App. 359, 361 (2) (494 SE2d 247) (1997). Although West asserts that the failure to include the requested language increased her burden of proof, we find this conclusory argument insufficient to carry her burden of showing harmful error. West does not articulate any distinction between the terms "skill" and "care" in this context, nor did we find that any witness at trial drew such a distinction. Certainly, West's expert did not make such a distinction in opining that Steinhaus and BCS were negligent in treating West's wound. West also fails to explain how the charge affected her burden of proof or could have affected the jury's verdict. She does not assert, for example, that the evidence at trial would have supported a jury determination that Steinhaus exercised skill, but failed to exercise care (or vice versa), even if it did not support a finding that she failed to exercise both. Thus, we cannot conclude that the trial court's denial of West's requested charge resulted in harmful error.

Although in *Brown v. Macheers*, 249 Ga. App. 418, 422 (8) (547 SE2d 759) (2001), this Court found error in the trial court's failure to charge the language requested in this case, that opinion does not alter our conclusion here. The *Brown* opinion does not address the instructions the jury in that case actually received and thus we cannot determine whether the trial court properly charged on this issue at all. Moreover, the opinion does not specifically address the issue of harmful error. Accordingly, *Brown* has no application here.

We find that "the charge as a whole was complete and accurate and did not lead to confusion," and thus no reversible error occurred. *Zwiren v. Thompson*, 276 Ga. at 503. See also *MARTA v. Allen*, 188 Ga. App. 902, 906-907 (5) (374 SE2d 761) (1988) (no error in jury charge on duty of proprietor expressed in the disjunctive, not conjunctive, when language of charge used repeatedly in appellate court decisions).

2. West next argues that the trial court erred in failing to strike the testimony of defense expert William Barber, M.D., because the doctor based his testimony upon an erroneous standard of care. In Georgia, the reasonable degree of care and skill required of physicians is that "which is ordinarily employed by the profession generally and not such as is ordinarily employed by the profession in the locality or community." (Citation and punctuation omitted.) *Murphy v. Little*, 112 Ga. App. 517, 522 (2) (145 SE2d 760) (1965). See also

*McDaniel v. Hendrix*, 260 Ga. 857, 859 (1) (401 SE2d 260) (1991). West asserts that Barber improperly premised his opinion on the standard of care of surgeons under like circumstances and similar conditions in the metropolitan Atlanta area.

She bases this argument on Barber's testimony during cross-examination about his definition of the standard of care. The doctor testified, "The definition of standard of care to me is that the management of a patient as deemed appropriate by what would be considered reasonable standards within that community." West's attorney then questioned him further:

Q: And by that you mean the community of Atlanta only?
A: Well, you know, that's the definition that I think makes sense to me, but I can't tell you and I'll have to think about it a second exactly what that community is. I'm not sure it means just the Atlanta community. I think it would mean — to me what that refers to, is the care in a very, very [sic] town somewhere might be different than the care in a major metropolitan center. Some center here may have a brand new piece of equipment that they may not have in a small town. So I think the care does vary from very, very small population[ ] centers to larger population centers. So I think someone in a different community could potentially be judged by a different standard than maybe I can testify based on the facilities I have at my disposal.

West's attorney again asked Barber whether his opinion that Steinhaus had not violated the standard of care was based upon his understanding of what the standard of care is within metropolitan Atlanta. Barber replied, "That's a portion of it, and it's based on careful review of the medical record." West's attorney once again asked:

Q: Your review of the medical records and your understanding of the standard of care within the metropolitan Atlanta medical community?
A: I wouldn't necessarily limit it to that. I mean, we have meetings that involve surgeons from all over the country and we certainly discuss the care of patients.

* * * * * * *

Q: . . . So is it the same standard of care for surgeons all over the country? . . .

A: Well, you have brought up a very good point. I'm kind of thinking about it as we go through because I'm not sure I've thought about it quite to that extent before. I think the care is not identical all over because of the small population based areas, but I feel like the standard of care was met for this patient by Dr. Steinhaus related to what's considered to be usual and appropriate care within . . . this area.

West contends this testimony shows Barber applied the wrong standard in assessing Steinhaus's treatment, and thus the trial court should have granted her motion to strike.

"The admission of evidence lies [within] the sound discretion of the trial court." (Citation and punctuation omitted.) *Monroe v. Hyundai Motor America*, 270 Ga. App. 477, 479 (606 SE2d 894) (2004). And "[a]bsent an abuse of discretion, the trial court's decision will not be disturbed." (Citation and punctuation omitted.) Id.

Although Georgia recognizes a standard of care for physicians generally, it does not automatically follow that the trial court abused its discretion in allowing Barber's testimony. In fact, this Court acknowledged in *Murphy v. Little*, the case first adopting a standard of care for physicians generally, that testimony addressing a more localized standard of care could be admitted for the jury's consideration:

> Where medical testimony is required in cases of this kind, an otherwise qualified medical expert familiar with the standards of care considered by the profession generally to represent a reasonable degree of care and skill may testify, and the jury, in determining what weight to ascribe to the evidence, may consider any evidence before them as to the standards of practice in the particular locality or community where the injury is treated. Where the medical testimony offered creates an issue of fact on the question of whether reasonable care and skill was used, the question is for the jury rather than the court.

(Citation omitted.) *Murphy v. Little*, 112 Ga. App. at 523 (2). And this Court later found no error in the trial court's denial of a directed verdict where the defense expert presented testimony concerning a local standard of care, in light of other evidence from the same witness showing application of a general standard of care. *Summerour v. Saint Joseph's Infirmary*, 160 Ga. App. 187, 188 (286 SE2d 508) (1981).

The Supreme Court of Georgia also considered this issue in a case where the affidavit of the plaintiff's expert referenced a "standard of

care of physicians specializing in obstetrical medicine practicing in Atlanta, Georgia, or in any other similar community" and to "deviations from the acceptable standard of care." (Punctuation omitted.) *McDaniel v. Hendrix*, 260 Ga. at 858. The trial court granted the defendant's motion for summary judgment based on this affidavit, and this Court affirmed. *McDaniel v. Hendrix*, 195 Ga. App. 252 (393 SE2d 4) (1990). The Supreme Court reversed, however, holding the affidavit sufficient to withstand summary judgment, when the various inferences arising from it were construed in the plaintiff's favor. *McDaniel v. Hendrix*, 260 Ga. at 859-860 (2). The court noted that although Georgia applies a standard of care for physicians generally, it would not undertake to "delineate how that standard [of care] should be articulated in every case." Id. at 858. Thus, such expert evidence must be evaluated in light of the circumstances of each case.

We cannot say that the trial court abused its discretion in denying West's motion to strike. We note first that Barber was not the only expert for the defense. Steinhaus and BCS also presented testimony from Darius Francescatti, M.D., who practices in the Chicago area, and West does not contend that Francescatti failed to apply the appropriate standard. Barber's testimony must be considered in light of this evidence. See *Summerour v. Saint Joseph's Infirmary*, 160 Ga. App. at 188. Compare *Sikorski v. Bell*, 167 Ga. App. 803, 805 (307 SE2d 701) (1983) (affirming summary judgment where expert's affidavit stated that he was familiar with standard in Atlanta and similar communities, but provided no evidence of standard generally); *Williams v. Ricks*, 152 Ga. App. 555, 556-558 (263 SE2d 457) (1979) (finding no error in exclusion of testimony applying standard of care in Fulton County and Atlanta areas, where no evidence presented as to standard generally).

Moreover, Barber's explanation of his application of the standard of care, while not the height of clarity, could be interpreted as at least bringing to bear his knowledge of the standard nationally. He states that he meets with physicians from around the country to discuss patient care, and he cites an article from "the Dermatology Journal" in support of Steinhaus's use of latex glove material to pack the wound.[3]

We find, therefore, that a question of fact existed as to whether Barber applied the appropriate standard. The trial court charged that a physician "should use that degree of care and skill ordinarily employed by the profession generally under similar conditions and like surrounding circumstances." It was up to the jury to weigh Barber's testimony to determine if it met this standard. *Summerour*

---

[3] Barber did not specifically identify this as a national journal, however.

*v. Saint Joseph's Infirmary*, 160 Ga. App. at 188; *Murphy v. Little*, 112 Ga. App. at 523. The jury could have determined, for example, that Barber's background knowledge of a national standard sufficiently informed his opinion, and that his references to smaller and larger population centers reflected his adjustment for "similar conditions and like surrounding circumstances."

3. West also contends that the trial court erred in partially granting the defense's directed verdict as to her claim for damages. Even assuming, arguendo, that the trial court erred in this respect, as we are affirming the jury's verdict in favor of the defendants, this issue is moot. *Slutzky v. Warbington*, 171 Ga. App. 621, 622 (320 SE2d 623) (1984).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 25, 2008.

*Ralph E. Hughes*, for appellant.

*Huff, Powell & Bailey, Randolph P. Powell, Jr., Anna B. Fretwell*, for appellees.