S11G1871. STOLTE et al. v. FAGAN et al.

(731 SE2d 653)

HUNSTEIN, Chief Justice.

We granted certiorari to the Court of Appeals in this professional negligence action to address (1) the standard for harmless error where a trial court refuses to strike an unqualified juror and (2) the trial court's duties under OCGA § 9-10-185 to remedy prejudicial statements by counsel. Finding that the Court of Appeals erred in its analysis of both issues, we reverse and remand for further proceedings.

Plaintiffs Kerry Stolte and her husband, Scott Ross, filed a malpractice action against Defendant M. James Fagan III and his dental practice, alleging that Dr. Fagan had negligently severed Stolte's lingual nerve in the course of a wisdom tooth extraction. Following a five-day trial and two days of deliberations, the jury returned a defense verdict. After Stolte's motion for new trial was denied, she appealed, alleging errors in jury selection and closing argument.

In her appeal, Stolte claimed that the trial court had erred in refusing to strike for cause four jurors who were predisposed in favor of medical professionals and/or against medical malpractice plaintiffs. In addition, Stolte claimed that, during closing argument, defense counsel had improperly urged the jury to consider the impact of a plaintiff's verdict on Dr. Fagan's professional reputation and that the trial court had failed to sufficiently address this impropriety. The Court of Appeals affirmed, *Stolte v. Fagan*, 311 Ga. App. 123 (714 SE2d 339) (2012), holding that Stolte could not prove she was harmed

by the trial court's refusal to strike the four allegedly biased jurors because she did not show that she had been forced to exhaust her peremptory strikes to eliminate these jurors. Id. at 125-126 (2). The Court of Appeals further held that Stolte had waived her objection to one instance of allegedly improper closing argument and had acquiesced in the trial court's response to the other, thereby foreclosing further review of those claims. Id. at 124-125 (1). This Court granted Stolte's petition for writ of certiorari to address both of these holdings.

1. The first issue we consider is whether a civil litigant who appeals a trial court's refusal to excuse an allegedly unqualified juror must show that she used all her peremptory strikes[1] as a prerequisite to proving the harm required to establish reversible error. In the criminal context, we have previously resolved this question, expressly declining to require exhaustion of peremptory strikes as a condition of establishing harm. *Harris v. State*, 255 Ga. 464, 465 (2) (339 SE2d 712) (1986) ("[t]he defendant's use of his peremptory strikes will . . . no longer play a role in our evaluation of the harm caused by the refusal to strike an unqualified juror"); accord *Wallace v. State*, 275 Ga. 879 (3) (572 SE2d 579) (2002) (reiterating *Harris* rule and overruling Court of Appeals cases that had ignored it). Thus, the only issue we must resolve here is whether this principle applies equally in the civil context. See *Guoth v. Hamilton*, 273 Ga. App. 435 (1) (615 SE2d 239) (2005) (noting that *Harris* rule has not been expressly applied to civil cases).

Having reviewed our case law on the topic and the policy underpinnings of the *Harris* rule, we discern no sound reason for limiting its scope to criminal cases. In justifying its approach, the *Harris* court emphasized the defendant's statutory right to "a panel of . . . qualified jurors. [Cit.]" *Harris*, 255 Ga. at 465 (2). See also OCGA § 15-12-125 (recognizing right to demand "full panel of . . . competent and impartial jurors from which to select a jury"). This right to strike a jury from a full panel of qualified and competent jurors applies equally to civil litigants as to parties in criminal cases. See OCGA § 15-12-122 (a) (1) & (b) (affording civil litigants the right to "a full panel of . . . competent and impartial jurors from which to select a jury"); accord OCGA § 15-12-123 (a). In other words, litigants —

---

[1] Technically, the term "peremptory challenge" appears only in those Code sections applicable to criminal juries; however, the same concept is embraced in the civil jury provisions affording the parties alternate strikes without cause. See Richard C. Ruskell, Davis & Shulman's Ga. Practice & Procedure, § 20:6 & n. 1 (2011-2012 ed.). For ease of reference, we use the term "peremptory strikes" – as did the Court of Appeals and the parties – to denote strikes without cause in both criminal and civil cases.

criminal and civil — are entitled to the removal of unqualified jurors *before* they begin exercising their peremptory strikes.

In addition, as noted by Justice Gregory, whose special concurrence on the topic was embraced by the *Harris* court, "[t]here are too many variables which may give rise to the non-use of a peremptory challenge" to justify viewing the non-use of strikes as conclusive proof of the harmlessness of an erroneous failure to strike for cause. *Blankenship v. State*, 247 Ga. 590, 597 (280 SE2d 623) (1981) (Gregory, J., concurring specially); see also *Harris*, 255 Ga. at 465 (2) (citing *Blankenship* special concurrence). Again, given that this rationale holds just as true for civil cases as for criminal cases, there is no logical reason to apply a different rule in the civil context.

In sum, the policy underlying the *Harris* rule, to facilitate the attainment of a fair and impartial jury, is no less important to civil litigants as it is to parties in criminal cases. See *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002) (noting "primary duty" of trial judge "[i]n both civil and criminal contexts . . . to ensure the selection of a fair and impartial jury"). The *Harris* rule, therefore, should apply in both contexts. The Court of Appeals erred in holding otherwise, and the case must be remanded to it for review of the merits of Stolte's claims regarding the qualification of each of the four jurors in question.

2. We next consider Stolte's claims regarding closing argument. As defense counsel was concluding his closing argument, he stated, "[t]his is a very serious matter. [Dr. Fagan's] conduct, his reputation, his treatment, his care has been called into question this week." Stolte's counsel immediately objected, and during a sidebar the trial court instructed defense counsel to "move on." Resuming his closing, defense counsel referred on several occasions to the "trust" Dr. Fagan's patients place in him: "Jim Fagan has dedicated his entire professional career to treating patients . . . . Patients everyday in this town, the town we all live in, trust Jim Fagan for extractions, for dental implants, putting prosthetic teeth in, they trust him for root canals, they trust him for cleanings." At the conclusion of defense counsel's closing argument some 90 seconds later, Stolte's counsel signaled an objection, and, after a recess, noted defense counsel's apparent disregard of the court's earlier admonition and requested an immediate curative instruction. The trial court refused this request, opting to address the issue during its general charge to the jury by inserting a reference to "reputation" into the standard sympathy charge it had already agreed to give. Stolte's counsel noted for the record his exception to the court's ruling and subsequently raised this issue on appeal, claiming the trial court had failed to fulfill its duty under OCGA § 9-10-185 to prevent counsel's prejudicial statements.

The Court of Appeals refused to review the merits of Stolte's claim, finding that, by failing to object further when the trial court instructed defense counsel to "move on," Stolte had acquiesced in the trial court's initial response to her objection, and that, by failing to object contemporaneously when defense counsel made his remarks concerning "trust," Stolte had waived any further objection. *Stolte v. Fagan*, 311 Ga. App. at 124-125 (1). In so holding, we find, the Court of Appeals has imposed a greater burden on the objecting party than the plain language of OCGA § 9-10-185 requires.

(a) OCGA § 9-10-185 reads:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds. In its discretion, the court may order a mistrial if the plaintiff's attorney is the offender.

Id. In *O'Neal v. State*, 288 Ga. 219 (702 SE2d 288) (2010), we addressed a similar waiver issue under OCGA § 17-8-75, the criminal code analogue to, and virtual carbon copy of, OCGA § 9-10-185.[2] There, the trial court sustained the defendant's objection to improper argument, directing the prosecutor to "proceed on," but did not give a curative instruction, and the defendant requested no additional action. Id. at 219. Concluding that the defendant had not waived his right to appellate review of the trial court's handling of the matter, we held:

> Nowhere in the statute is there a requirement for . . . counsel to specifically request additional remedies after interposing an objection to the improper statements made by [opposing counsel]. To the contrary, the plain language of [the statute] refers to the *trial court's* independent duty, after . . . counsel's objection, to rebuke [opposing counsel], give an appropriate curative instruction, or grant a mistrial in the event that

---

[2] OCGA § 17-8-75 provides:

Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

> [opposing counsel] has injected into the case prejudicial statements on matters outside of the evidence. Consistent with the plain language of [the statute], this Court's most recent authorities interpreting the statute have allowed appellate review of a trial court's failure to rebuke a prosecutor or give a curative instruction where defense counsel did nothing more than interpose an objection to the prosecutor's improper statements. [Cits.]

(Emphasis in original.) Id. at 221-222 (1). In other words, once an objection to improper argument is sustained, "[t]he objecting attorney is under no duty to request [remedial] measures; at that juncture the trial court is required to undertake them on its own initiative." Christopher J. McFadden et al., Georgia Appellate Practice § 9:15 (2011-2012 ed.).

Given that the language of OCGA § 9-10-185 is virtually identical to that in OCGA § 17-8-75, and given that our construction of OCGA § 17-8-75 in *O'Neal* was expressly premised on the "plain language" of that statute, 288 Ga. at 220, 221, 222, we accord OCGA § 9-10-185 the same meaning as its criminal code counterpart. Thus, we hold that, in civil cases as well as in criminal cases, once an objection to improper argument has been sustained, the trial court is required to employ some corrective measure to remedy the harm resulting from the impropriety, even absent a specific request for such a measure. In so holding, we overrule *Garner v. Victory Express, Inc.*, 264 Ga. 171 (2) (442 SE2d 455) (1994), *Dascombe v. Hanley*, 270 Ga. App. 355 (1) (b) (606 SE2d 602) (2004), and *Strickland v. Stubbs*, 218 Ga. App. 279 (2) (459 SE2d 473) (1995), to the extent they hold otherwise. See *Garner*, supra at 173 (2) (stating in dicta that, if trial court sustains objection to improper argument, "counsel may not then urge on appeal that the trial court erred in failing to undertake any additional [action] which was not requested"); *Dascombe*, supra at 358-359 (1) (b) (holding that reviewing court will not reverse trial court for failing to remedy improper argument in manner not requested by objecting party); *Strickland*, supra at 280 (2) (same).

Applying this rule here, once the trial court sustained Stolte's objection, the court assumed an independent duty to take some remedial action — a curative instruction or rebuke of counsel, for example — without any additional request from Stolte's counsel. Accordingly, the omission of such a request did not effect an acquiescence in the trial court's inadequate response or a waiver of Stolte's right to appellate review of this issue. Compare *Smith v. State*, 261 Ga. 512 (2) (407 SE2d 732) (1991) (finding waiver of appellate review where trial court *did* take remedial action and objecting party failed

to request further relief or object anew). On remand, reversal will be required if "the uncorrected improper argument could have affected the jury's verdict. [Cit.]" *Steele v. Atlanta Maternal-Fetal Medicine*, 271 Ga. App. 622, 623 (1) (610 SE2d 546) (2005), overruled on other grounds by *Smith v. Finch*, 285 Ga. 709 (681 SE2d 147) (2009). See also *Atlantic Coast Line R. Co. v. McDonald*, 103 Ga. App. 328 (3) (119 SE2d 356) (1961) (reversing for trial court's failure to remedy defense counsel's improper closing argument).

(b) As to defense counsel's subsequent "trust" remarks, we agree with the Court of Appeals that Stolte's counsel failed to object contemporaneously as is required. "The proper time to object to improper argument is when it occurs. [Cit.]" *Moxley v. Moxley*, 281 Ga. 326, 328 (6) (638 SE2d 284) (2006). We have held that such objections must be made at the time the offending remarks are made, rather than at the conclusion of the argument. See *Mullins v. Thompson*, 274 Ga. 366 (2) (553 SE2d 154) (2001) (objection to improper argument made after, rather than during, argument was untimely); see also *Hamilton v. Shumpert*, 299 Ga. App. 137, 144 (3) (682 SE2d 159) (2009) ("objections based upon improper closing argument are untimely when first made after the closing argument has concluded"). Thus, because Stolte's counsel did not object at the time the "trust" comments were made but instead waited until defense counsel had concluded his argument, Stolte's objection was untimely.

To the extent Stolte contends that her prior objection to the "reputation" comments sufficed to preserve her objection to the "trust" remarks, we reject this argument. Even if, as Stolte claims, the "trust" comments were sufficiently similar to the "reputation" comments to have been substantively encompassed within Stolte's initial objection, the fact that Stolte made a prior objection does not obviate her responsibility to interpose a contemporaneous objection at each instance of offending argument. See, e.g., *Telcom Cost Consulting, Inc. v. Warren*, 275 Ga. App. 830 (1) (621 SE2d 864) (2005) (absent continuing objection, counsel must object to each instance of offending testimony as it is offered).[3]

---

[3] We acknowledge that in circumstances like those presented here, this rule creates a dilemma for the objecting party, who, being obliged to make repeated objections in order to preserve the issue, risks alienating the judge and jury with such interruptions. However, given our clear enunciation – first in *O'Neal* and now here – of the trial court's mandate to take affirmative remedial steps to remedy improper argument upon objection, we believe the risk of repeated improprieties will be diminished. In other words, had the trial court given a curative instruction or issued a rebuke to defense counsel in the first instance, it is likely defense counsel would have been more cautious in his choice of words during the remainder of his argument, thus avoiding subsequent problems altogether.

However, the untimeliness of Stolte's objection does not, as the Court of Appeals held, preclude all appellate review of this issue. Rather, when no timely objection is made, the standard for reversible error is "whether the improper argument in reasonable probability changed the result of the trial. [Cit.]" *Mullins*, supra, 274 Ga. at 367 (2). Accord *Moxley*, 281 Ga. at 328 (6); *Hamilton*, 299 Ga. App. at 144 (3). On remand, the "trust" remarks must thus be assessed under this standard, taking into account the fact that they were made on the heels of the "reputation" comment that the trial court deemed erroneous.[4]

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED SEPTEMBER 10, 2012.

*Lamar, Archer & Cofrin, Robert C. Lamar, Keith A. Pittman*, for appellants.
*Hall, Booth, Smith & Slover, Terrell W. Benton III, Dean T. Cleaveland*, for appellees.

---

[4] We do question the continued validity of the rationale for reviewing the merits of untimely objections to closing arguments in civil cases, when we do not conduct such a review in non-death penalty criminal cases. See, e.g., *Hunt v. State*, 279 Ga. 3 (3) (608 SE2d 616) (2005) (untimely objection to closing argument results in waiver); *Brown v. State*, 278 Ga. 544 (5), (6) (604 SE2d 503) (2004) (same). Given that this issue has been neither argued nor even raised by the parties, we do not resolve it here.