A06A1151. COREGIS INSURANCE COMPANY v. NELSON et al.
(639 SE2d 365)

BERNES, Judge.

Following a school bus accident, Marie Mizell, individually and as parent and next friend of the minor child Charles Anthony Nelson, sought no-fault coverage under an insurance policy issued by Coregis Insurance Company to the Houston County Board of Education. On motion for summary judgment, the trial court ruled that the auto medical payments coverage of $5,000 provided by the policy did not satisfy the no-fault requirements of Georgia insurance law. The trial court further ruled that the liability portion of the policy with coverage up to $1,000,000 should instead be construed as providing the required no-fault coverage. A jury trial was then conducted solely on the issue of damages, resulting in entry of a final judgment in the total amount of $99,955.49 in favor of Nelson. For the reasons discussed below, we conclude that summary judgment should have been granted to Coregis based on its payment of the $5,000 policy limit to Nelson under the auto medical payments coverage provision.

The evidence of record reflects that on September 25, 2002, Nelson, a student at Perry Middle School, was injured while disembarking from a school bus owned and operated by the Houston County Board of Education. The bus had transported Nelson, along with other members of the Perry Middle School football team, to a football stadium. After Nelson exited from the back door, the bus engine backfired, spewing flames, carbon particles, hot tar, and exhaust gases from the tail pipe. The right side of Nelson's face, neck, and ear were burned, and Nelson sustained hearing loss and permanent disfigurement, requiring medical treatment and several surgeries.

Prior to the school bus accident, Coregis had issued an insurance policy to the Houston County Board of Education. The policy provided liability insurance coverage with a limit of $1 million for each accident (the "Liability Provision"). In a separate provision, the policy provided auto medical payments coverage with a limit of $5,000 for each person (the "Medical Payments Provision").

Nelson's mother, individually and as his parent and next friend, filed this lawsuit against Coregis, seeking recovery under the insurance policy pursuant to OCGA § 20-2-1090. That statute provides:

> The various school boards of the counties, cities, and independent school systems employing school buses are authorized and required to cause policies of insurance to be issued insuring the school children riding therein to and from school against bodily injury or death at any time resulting from an accident or collision in which such buses are involved. The amount of such insurance shall be within the discretion of the respective boards.

During the course of the litigation, Coregis filed a motion for summary judgment, contending that Nelson's claim was moot because Coregis had already satisfied its statutory obligations by paying Nelson the $5,000 limit under the Medical Payments Provision. The trial court denied Coregis' motion, finding that the Medical Payments Provision did not satisfy OCGA § 20-2-1090, and instead construed the separate Liability Provision with a $1,000,000 coverage limit as providing the required statutory coverage.

Thereafter, the trial court submitted the case to the jury for a determination solely as to damages. The jury returned a verdict in favor of Nelson and his mother in the amount of $75,000 for pain and suffering and $29,955.49 for medical expenses. The trial court entered judgment in accordance with the verdict, and gave Coregis a $5,000 credit representing its prior payment of medical expenses to Nelson. Coregis now appeals from the entry of final judgment, enumerating as error the trial court's denial of its motion for summary judgment.

1. As an initial matter, we note that Coregis' challenge to the denial of its motion for summary judgment has not been rendered moot as a result of the subsequent entry of verdict and judgment. It is true that "[w]hen [a] case has proceeded to trial and the verdict and judgment is before us for review, if the evidence supports the verdict, the issue of an earlier denial of summary judgment is moot." *Schirmer v. Amoroso*, 209 Ga. App. 682, 683 (2) (434 SE2d 80) (1993). Significantly, however, if the legal issues raised and resolved in denying the motion for summary judgment "were not considered at trial," then the denial of the motion is not rendered moot by the verdict and judgment. See *Lovell v. Rea*, 278 Ga. App. 740, 742 (1) (629 SE2d 459) (2006). Under such circumstances, a party may appeal the denial of summary judgment as part of the party's direct appeal from the final judgment, and the denial will be reviewed and determined by this Court. See OCGA § 5-6-34 (d); *Schirmer*, 209 Ga. App. at 683-684 (2).

Here, in denying Coregis' motion for summary judgment, the trial court made certain rulings concerning how the insurance policy should be construed which were not considered in the subsequent trial limited to damages. As such, the verdict and judgment entered on the damages trial did not moot Coregis' challenge to the denial of its motion for summary judgment. See *Lovell*, 278 Ga. App. at 742 (1). We therefore may review the denial of the motion under OCGA § 5-6-34 (d).

2. Coregis contends that the trial court erred in denying its motion for summary judgment because the Medical Payments Provision of the insurance policy satisfied its obligations under OCGA § 20-2-1090, and because Coregis paid out the $5,000 policy limit for that provision to Nelson. "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." (Citations omitted.) *McCaskill v. Carillo*, 263 Ga. App. 890 (589 SE2d 582) (2003). "The construction of a contract is peculiarly well suited for disposition by summary judgment because, in the absence of an ambiguity in terms, it is a question of law for the court." (Punctuation and footnote omitted.) *Svc. Merchandise Co. v. Hunter Fan Co.*, 274 Ga. App. 290, 292 (1) (617 SE2d 235) (2005). Based on our review of the applicable statutory framework and the insurance contract at issue, we conclude that the trial court should have granted summary judgment to Coregis.

OCGA § 20-2-1090 requires school boards to maintain insurance on school children riding school buses that insures them against bodily injury or death resulting from an accident or collision involving such a bus, in an amount "within the discretion of the respective boards." In our prior interpretations of OCGA § 20-2-1090, we have held that "the insurance specially covering school children is accident insurance *without regard to the negligence* of anybody." (Citation omitted; emphasis supplied.) *Jones v. State Farm &c. Ins. Co.*, 100 Ga. App. 727, 729 (1) (112 SE2d 323) (1959). The statute thus mandates the provision of no-fault accident coverage to school children, the proceeds of which may be recovered without proof of liability. And, to the extent that an insurance policy purchased by a school board does not comply with OCGA § 20-2-1090, we will read the mandated statutory terms into the policy. See *Jones*, 100 Ga. App. at 729 (1).

In the present case, the parties dispute over which provision of the insurance policy should be construed as the no-fault accident coverage provision mandated by OCGA § 20-2-1090 — the Medical Payments Provision or the Liability Provision. "Where the terms are

clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the insurance contract alone to ascertain the parties' intent. The contract is to be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others." (Citation, punctuation and footnote omitted.) *Fidelity Nat. Title Ins. Co. &c. v. OHIC Ins. Co.*, 275 Ga. App. 55, 57 (619 SE2d 704) (2005). Mindful of these rules of construction, we examine the two provisions of the insurance policy over which the parties argue.

The Medical Payments Provision of the insurance policy provides, in relevant part, that "[Coregis] will pay reasonable expenses incurred for necessary medical and funeral services to or for an 'insured' who sustains 'bodily injury' caused by an 'accident.' " The Medical Payments Provision establishes a $5,000 limit on coverage and does not condition recovery of proceeds upon proof of legal liability for damages. In contrast, the Liability Provision of the insurance policy with a "liability coverage" limit of $1,000,000 requires proof of liability, with Coregis agreeing to "pay all sums an 'insured' *legally must pay as damages* because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " (Emphasis supplied.)

The plain language of the insurance policy clearly reflects that the Medical Payments Provision with a coverage limit of $5,000 was intended to serve as the no-fault accident coverage required by OCGA § 20-2-1090, since the Medical Payments Provision, unlike the Liability Provision, allows for recovery of proceeds without any showing of fault. The trial court, however, concluded that the Medical Payments Provision did not satisfy the requirements of OCGA § 20-2-1090, apparently based on Nelson's argument that the statute requires complete coverage for "bodily injury or death," not merely coverage of medical and funeral expenses as provided under the provision. Based on this conclusion, the trial court then went on to conclude that the no-fault coverage requirements of OCGA § 20-2-1090 should be read into the separate Liability Provision with a coverage limit of $1,000,000. The net effect of the trial court's ruling was that Nelson could recover up to $1,000,000 under the policy without any finding of fault on the part of the insured school board.

The trial court's construction of the insurance policy was erroneous. Even if the Medical Payments Provision did not provide the full coverage mandated by OCGA § 20-2-1090 (an issue that we need not resolve),[1] the solution was not for the trial court to read the

---

[1] It is undisputed that Nelson was paid the full $5,000 policy limit under the Medical

no-fault statutory requirements into the separate *liability* portion of the policy, which contravened the unambiguous terms of the policy and the intent of the contracting parties to have the Medical Payments Provision serve as the no-fault policy provision. We have held that "[n]o-fault coverage does not infringe upon the liability provisions of an automobile insurance policy. . . . No-fault principles apply only to the no-fault provisions of the policy." (Citations and punctuation omitted.) *Mitchell v. Hartford Accident & Indem. Co.*, 168 Ga. App. 126, 129 (2) (308 SE2d 374) (1983). As such, given the clear distinction between no-fault and liability coverage under the insurance policy, the trial court should have read the additional coverage requirements of OCGA § 20-2-1090 (if any) into the no-fault provision of the policy — the Medical Payments Provision with a policy limit of $5,000.

It follows that the trial court erred in failing to conclude that Nelson had received the complete benefit of OCGA § 20-2-1090 when he was paid the $5,000 limit of the Medical Payments Provision. While we are sympathetic to Nelson's situation given the low policy limit of the Medical Payments Provision, we must vacate the final judgment and remand the case to the trial court with direction that summary judgment be entered in favor of Coregis.

*Judgment vacated and case remanded with direction. Andrews, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 20, 2006 — 

*Swift, Currie, McGhee & Hiers, Christopher D. Balch, Michael Carestia, Weeks & Candler, Reagan G. Sauls*, for appellant.

*Miller, Cowart & Howe, Wallace Miller III, Joel A. Howe*, for appellees.

---

Payments Provision. Hence, even if OCGA § 20-2-1090 required no-fault coverage for additional types of expenses beyond the types covered under the Medical Payments Provision, it would not affect the outcome in this case, since the total proceeds paid out under the no-fault provision still would be capped at $5,000.