A10A2325. McKISSICK v. AYDELOTT.

(705 SE2d 897)

MIKELL, Judge.

This is the second appearance of this case in this court. In the first, *McKissick v. S. O. A., Inc.* (referred to herein as "*McKissick I*"),[1] we reversed the grant of summary judgment to S. O. A., Inc. ("SOA") and its president, Steven Aydelott, on Timothy McKissick's claims for malicious prosecution and malicious arrest.[2] The case proceeded to trial, and the jury, utilizing a special verdict form, rendered a verdict in favor of Aydelott. The jury concluded that Aydelott had been released from liability by reason of a Mutual Release (the "Release") executed on November 21, 2005, by McKissick, SOA, and The Cincinnati Insurance Company, following an arbitration award in McKissick's favor. McKissick appeals from the trial court's judgment on the verdict, arguing that the court erred when it admitted the Release into evidence, denied his motion in limine, and excluded evidence of the arbitration award. We affirm.

We begin with the facts set forth in *McKissick I* that preceded the execution of the Release:

> [I]n the late summer of 2003, McKissick was employed as a project estimator with Allgood Electrical Company, Inc. ("Allgood"). Allgood was hired as an electrical subcontractor by SOA, which was the general contractor for the construction of the Perry High School Multi-Purpose Facility (the "Project"). During the fall of that year, Allgood left

---

[7] See *Banks*, supra; *Ballard*, supra; *Johns*, supra; *Steele v. State*, 181 Ga. App. 695, 696 (1) (353 SE2d 612) (1987).

[1] 299 Ga. App. 772 (684 SE2d 24) (2009).

[2] Id.

the Project due to a dispute over payment with SOA and Aydelott. McKissick averred that he worked out an agreement with Aydelott to complete the electrical work on the Project for which he would be paid $ 1,000 weekly plus the cost of materials. Because McKissick was not a licensed electrician, he arranged for his father-in-law, Albert Wayne Davis, who was a licensed electrician, to visit the site each week to inspect McKissick's work. McKissick further averred that Aydelott knew about the arrangement with Davis and did not object to it. Eleven weeks after he began working on the Project, McKissick was terminated by Aydelott. On June 2, 2004, McKissick demanded payment for work performed in the amount of $ 9,373.94 and filed a lawsuit . . . in the Magistrate Court of Houston County in June 2004 [the "2004 action"].[3]

The case was transferred to the Superior Court of Houston County, and almost a year later, on October 12, 2005, the court ordered the case to arbitration. On November 7, 2005, the arbitrator awarded damages in the amount of $4,853.22 to McKissick.

On November 21, 2005, the parties executed the Release, agreeing to dismiss the 2004 action in exchange for payment to McKissick of the amount awarded by the arbitrator. The Release also provided as follows:

1. All of the Parties . . . hereby fully release and discharge each other . . . from all rights, claims, disputes, and/or causes of action which each of the . . . Parties . . . now have or may ever have after the signing of this agreement against each other . . . arising out of or connected to either: a) the events surrounding the work completed or not completed on; [sic] and, b) the agreement between them that was the subject of the . . . [c]ivil action; both of which were regarding the construction project known as the . . . Project. 2. This release is intended by each of the Parties to release all claims for damages or losses to each Party . . . whether known or unknown, . . . which either of the Parties may have against the other. Each Party understands and acknowledges the significance and consequences of such specific intention to release all claims and hereby assumes full responsibility for any damages or losses that either Party

---

[3] Id. at 772-773. The 2004 action named SOA and The Cincinnati Insurance Company as defendants and Timothy Greg McKissick Electrical Advantage as plaintiff and sought damages in the amount of $9,614.91.

may incur from the above referenced agreement and work performed pursuant thereto.

Several months later, on June 2, 2006, McKissick filed a new civil action against SOA and Aydelott, asserting claims based on malicious prosecution and malicious arrest (the underlying action),[4] based on the following events as described in *McKissick I* as follows:

> [T]wo months [after McKissick filed the 2004 action], [Aydelott] reported the following facts to the Houston County Sheriff's Office: that while McKissick worked on the Project, he ordered supplies from an electrical materials supplier using SOA's account without authorization from SOA; that the materials were not delivered to the job site but were picked up by McKissick; that some of the materials could not be accounted for at the job site; that neither McKissick nor the supplier could provide proof that the items had been delivered to the job site, but the supplier demanded payment from SOA and filed a lien against it; and that within the same time period, he learned that McKissick was not a licensed electrician and was performing substandard work. According to Aydelott, McKissick led him to believe that he was a licensed electrician. Aydelott also averred that he learned that McKissick had been convicted of armed robbery and was on parole for that offense.[5]

After Aydelott made this report,

> Sergeant Joseph Sendek was assigned to investigate the case. Sendek averred that upon commencing his investigation, he contacted Aydelott, who confirmed the information in the police report and asked Aydelott to provide documents relating to the investigation. Sendek further averred that he conducted the investigation in the manner he was trained; that Aydelott never asked him to undertake a certain course of conduct regarding the matter nor did he directly or indirectly urge that any action be taken; and that he concluded that probable cause existed to arrest McKissick for theft by deception. Sendek submitted an application for a search warrant to the magistrate court. A preliminary hearing was held, which McKissick attended with counsel.

---

[4] Id. at 773-774.
[5] Id. at 773.

Sendek was the only witness to testify at the hearing, and the warrant was issued. McKissick was arrested on September 10, 2004, and remained incarcerated until October 12, 2004. He was given a recognizance bond on the day of his arrest but could not post bond due to a hold placed by his probation officer. The criminal charges were dismissed on November 10, 2004.[6]

Based on this evidence, we reversed the trial court's grant of summary judgment to SOA and Aydelott on McKissick's claims for malicious prosecution and malicious arrest, concluding that genuine issues of fact remained as to whether there was probable cause for McKissick's arrest and whether Aydelott acted maliciously.[7] McKissick now appeals from the trial court's judgment entered on the jury's verdict in favor of Aydelott.

1. In his first enumeration of error, McKissick argues that the Release should not have been admitted into evidence because Aydelott was not named individually therein, but we find that McKissick waived this argument.

The record shows that McKissick's counsel stated that he planned to concede that SOA had been released from liability under the Release. McKissick's counsel also stated that

I think that [the jury] can be told, and I think the facts have pretty much shown that at the conclusion of the arbitration there was an award entered and that there was a release executed that released SOA, Inc. and the Cincinnati Insurance Company, and that Mr. McKissick gave the release. And then I guess the issue is whether or not that release later on ends up releasing the defendant individually. I think that's the issue to be decided.

By stipulation of the parties, the trial court informed the jury that an arbitration award was rendered in McKissick's favor in the action filed in magistrate court; that a Release was executed by Aydelott, on behalf of SOA, and by McKissick that released SOA and The Cincinnati Insurance Company from liability; that if Aydelott acted as an agent of SOA when he involved the police, he would have no liability in this action; but that if he acted as an individual, he would be responsible; and that the Release would be admitted into evidence. McKissick did not object to this instruction. At the close of

---

[6] Id. The facts cited from *McKissick I* were adduced on summary judgment, but the trial testimony is consistent therewith.

[7] Id. at 776-777 (1), (2).

evidence, the trial court informed the jury that it would receive a special verdict form, which posed several questions, the first of which inquired as to whether the jury believed the Release released all of the parties. The court instructed the jury that if it answered that question affirmatively, their deliberations would be over. McKissick did not object to the special verdict form.

"No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further."[8] By agreeing to the stipulation and by later failing to object to the special verdict form, McKissick waived this argument.[9]

2. McKissick argues that the trial court erred when it denied his motion in limine to exclude evidence pertaining to the issues litigated in the arbitration.[10] Specifically, McKissick maintains that res judicata barred Aydelott from arguing that McKissick committed any wrongdoing in the performance of his work because that issue was litigated at the arbitration. The trial court denied the motion in limine, concluding that the issues in the instant case were not the same as the issue posed in the first action, i.e., which party owed the other money. "A trial court's ruling on a motion in limine is reviewed for abuse of discretion."[11] We find no such abuse.

> The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action. [However,] [t]hree prerequisites must be satisfied before res judicata applies — (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.[12]

Although it is true that "[a]n award of arbitrators is conclusive as to

---

[8] (Citation and punctuation omitted.) *Renshaw v. Feagin*, 199 Ga. App. 148, 151 (4) (404 SE2d 457) (1991).

[9] See generally *Bruno v. Evans*, 200 Ga. App. 437, 442 (5) (408 SE2d 458) (1991) ("by failing to object timely to the format or content of the jury verdict form, appellant has waived any objection to error arising therefrom") (citation omitted).

[10] The actual motion in limine is not included in the record.

[11] (Citations omitted.) *Forsyth County v. Martin*, 279 Ga. 215, 221 (3) (610 SE2d 512) (2005).

[12] (Punctuation omitted.) *Body of Christ Overcoming Church of God v. Brinson*, 287 Ga. 485, 486 (696 SE2d 667) (2010), citing *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 546 (629 SE2d 260) (2006).

all matters submitted to them by the parties,"[13] res judicata does not apply here because there was no identity of the cause of action or previous adjudication by a court of competent jurisdiction. The malicious prosecution and malicious arrest claims involved here were not submitted to the arbitrator. In the six-page arbitration award, there is no reference to the facts that led to the filing of these claims.

In order to prevail on his claim for malicious prosecution, McKissick was required to show that a criminal prosecution was instigated without probable cause and with malice, pursuant to a valid warrant, accusation, or summons; and that the prosecution terminated in his favor and caused him damage.[14] We concluded in *McKissick I* that genuine issues of fact remained as to the issues of probable cause and malice.[15]

> The focus in a probable cause inquiry is whether the facts as they appeared at the time of instituting the prosecution were such as to lead a person of ordinary caution to *entertain a belief* that the accused was guilty of the offense charged. In other words, *the question is, not whether plaintiff was guilty, but whether defendants had reasonable cause to so believe* — whether the circumstances were such as to create in the mind of defendants a reasonable belief that there was probable cause for the arrest and prosecution. Probable cause is defined to be the existence of such facts and circumstances as would excite the belief in a reasonable mind, that the person charged was guilty of the crime for which he was arrested and prosecuted.[16]

It follows then that evidence of Aydelott's beliefs regarding McKissick's work performance at the time that Aydelott instituted the criminal prosecution was relevant and material to McKissick's claims. Thus, the trial court's denial of McKissick's motion in limine did not constitute an abuse of its discretion.[17]

3. In his last enumeration of error, McKissick argues that the trial court erroneously excluded the arbitration award from evidence as it could have been used to impeach any witness who testified that

---

[13] (Citation and punctuation omitted.) *Nannis Terpening & Assoc. v. Mark Smith Constr. Co.*, 171 Ga. App. 111, 113 (1) (318 SE2d 89) (1984).

[14] See *McNeely v. The Home Depot*, 275 Ga. App. 480, 482 (621 SE2d 473) (2005).

[15] Supra.

[16] (Punctuation and footnote omitted; emphasis omitted and supplied.) *Adams v. Carlisle*, 278 Ga. App. 777, 782 (1) (630 SE2d 529) (2006).

[17] *Forsyth County*, supra.

McKissick's work was deficient. "We review a trial court's decisions on the admissibility of evidence under an abuse of discretion standard,"[18] and again, we find no abuse of discretion.

As stated in Division 1, the jury was informed that an arbitration award was rendered in McKissick's favor in the magistrate court action. McKissick complains that the actual award should have been admitted, but he has not shown how he was harmed by its exclusion. "In order to constitute reversible error, both error and harm must be shown."[19] McKissick does not identify any witness whose testimony he could have impeached using the arbitration award. Additionally, McKissick has not shown that the content of the arbitration award would have had any bearing whatsoever on the first question posed in the special verdict form, which was dispositive of the case as discussed fully in Division 1. Accordingly, we conclude that this enumeration of error lacks merit, and we affirm the judgment of the trial court.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 1, 2011.

*Waymon S. Harrell*, for appellant.
*Stephen N. Hollomon*, for appellee.

---

[18] (Citation, punctuation and footnote omitted.) *Fuller v. Flash Foods*, 298 Ga. App. 217, 220 (2) (679 SE2d 775) (2009).

[19] (Citation omitted.) *Kersey v. Williamson*, 284 Ga. 660, 663 (3) (670 SE2d 405) (2008).