**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0166. AMERICAN NATIONAL HOLDING CORPORATION
v. EMM CREDIT, LLC.

PHIPPS, Chief Judge.

In this interlocutory appeal, American National Holding, Inc. challenges various pretrial rulings: (i) the denial of its motion for summary judgment on a fraudulent transfer claim asserted against it; (ii) rulings resulting in a party substitution; and (iii) the denial of its motion to preclude admission of certain evidence at trial. For reasons discussed below, the summary judgment ruling is reversed, the substitution rulings are affirmed, the evidentiary ruling is vacated, and the case is remanded for proceedings not inconsistent with this opinion.

This litigation was commenced on November 14, 2003 by a California company, NCOM, Inc. f/k/a Newcom, Inc. In its complaint, as amended, NCOM alleged that one of its former directors, Alexander Remington, had entered into a plea

agreement in September 2002, wherein he pled guilty in a federal court in California to embezzling a specified sum of money from NCOM from 1996 through early 1999; that in 2006, it (NCOM) had obtained in that court a monetary judgment (hereinafter the "California Judgment") for that amount against Remington, jointly and severally with his domestic partner and a Georgia company (Micro Equipment Corporation) of which Remington owned 95 percent of the stock.

NCOM sought in this litigation to recoup monies owed it under the California Judgment. NCOM named as defendants Remington and several associated persons and entities, including American National Holding Corporation. NCOM alleged that Remington had used the embezzled funds to purchase real and personal properties, which he then fraudulently transferred to the named persons and entities in order to avoid collection upon the California Judgment. During the course of the litigation, as we discuss below,[1] EMM Credit, LLC was substituted for NCOM. Then, on the eve of trial, American National was granted this interlocutory appeal, in which it challenges various rulings.[2]

_____

[1] See Division 2, infra.

[2] See OCGA § 5-6-34 (d) (pertinently providing that, on interlocutory appeal, "all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the

1. American National contends that the trial court erred in denying its motion for summary judgment on a fraudulent transfer claim asserted against it, maintaining that the claim is time-barred.

Specifically, EMM Credit sought to set aside a deed wherein Remington transferred to American National certain real property located in Gwinnett County, Georgia. Evidence showed that Remington purchased the property on April 18, 1996, and that same day, transferred it to American National. That company had been formed several years earlier with only Remington's domestic partner and Remington's two brothers as its stockholders.

In its motion for summary judgment, American National argued that the filing of the fraudulent transfer claim on November 14, 2003 was untimely. But the trial court determined that genuine issues of material fact remained for a jury.

---

appellate court, without regard to the appealability of the judgment, ruling, or order standing alone"). Cf. *Zekser v. Zekser*, ___ Ga. ___ (2) (___ SE2d ____) (2013) (Case No. S13F0408, decided June 17, 2013) (holding that, in discretionary appeals, review is "limited to the errors actually enumerated in the application").

The Uniform Fraudulent Transfer Act,[3] governing this claim,[4] sets forth the applicable limitation period.[5] The Act provides that a cause of action with respect to a fraudulent transfer is extinguished unless brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."[6]

EMM Credit counters that a jury should be allowed to determine whether its claim was extinguished under the Act. It sets forth in its brief that its corporate representative stands

> prepared to testify that he did not discover and should not have discovered the fraudulent transfer before November 14, 2002 [which was one year before the action was filed]. When [the representative] first

---

[3] OCGA § 18-2-70 et seq.

[4] Indeed, the complaint as amended alleged that Remington's transfer of the property to "insider" American National violated OCGA § 18-2-74. ) See OCGA § 18-2-71 (7) (defining "insider" for purposes of the Uniform Fraudulent Transfers Act).

[5] See *Huggins v. Powell*, 315 Ga. App. 599, 601-602 (1) (726 SE2d 730) (2012) (explaining that there is no vested right in a statute of limitation and that statutes addressing procedural and remedial rights such as statutes of limitation may be retroactively applied).

[6] OCGA § 18-2-79 (1).

learned of the September 4, 2002 indictment of Remington, he was on the board of NCOM in California. As part of his responsibilities in that position, he began to investigate the facts as they came to light in the indictment and plea agreement. He also began to investigate the finances of Mr. Remington in order to identify what happened to the funds Remington had embezzled from NCOM and identify ways to reclaim those funds. His investigation ultimately led to the decision to file suit in the Central District Court of California on February 26, 2003. Even as of the date of filing of [that] suit, [the representative] had not learned of the involvement of [American National] in Mr. Remington's affairs. Indeed, [American National] was not a defendant in the California federal suit. . . As [the representative] continued his investigation of Remington, he examined the Secretary of State and real estate records in Georgia. Later in 2003, [the representative] did discover the transfer of the subject property in Norcross, Georgia from Remington to [American National] and discovered Remington's interest in [American National], and EMM then filed its Complaint less than one year after that date. For that reason, [the] statute of limitations defense will not succeed at trial.

Notwithstanding, the question presented to the trial court was whether, on motion for summary judgment, the statute of limitation defense was meritorious.

[T]o prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence

5

to support such claims. Thus, the rule with regard to summary judgment is that a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[7]

Therefore, when challenged on motion for summary judgment that its claim was precluded as untimely filed, EMM Credit had the burden to overcome the summary judgment hurdle by pointing to specific evidence giving rise to a triable issue thereon. Although EMM Credit has asserted in its brief circumstances that it anticipates presenting to a jury, EMM Credit has neither provided citation to the record in support of the circumstances asserted in its brief, nor has it asserted that the record contains such evidence;[8] and we find no affidavit or any other sworn statement of record by that representative. "Unsupported assertions of fact contained in the

---

[7] *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted).

[8] See Court of Appeals Rule 25 (b) (1); see also *Westmoreland v. State*, 287 Ga. 688, 696 (10) (699 SE2d 13) (2005) (noting that it is not the job of the appellate court to cull the record on behalf of a party); *Cox v. Southern Guaranty Ins. Co.*, 254 Ga. App. 776, 778 (2) (563 SE2d 882) (2002) ("This court has no duty to cull the record in search of evidence to support the contentions of parties.").

briefs of parties but not supported by evidence of record cannot be considered in the appellate process."[9]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10] "On appeal from the denial of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[11] Given the foregoing and the record before us, the denial of summary judgment cannot be sustained and is hereby reversed.[12]

2. American National contends that the trial court erred "when it removed NCOM as a party."

---

[9] *Shuman v. ILA Local 1414*, 277 Ga. App. 76, 78 (3) (625 SE2d 482) (2005) (punctuation and footnote omitted).

[10] OCGA § 9-11-56 (c).

[11] *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010) (citation and punctuation omitted).

[12] See OCGA § 9-11-56 (e); *Cowart*, supra; *Huggins*, supra.

7

About four years into the litigation, on September 27, 2007, NCOM filed a motion to substitute EMM Credit as the party plaintiff. It stated that NCOM had obtained the California Judgment (against Remington, his domestic partner, and Micro Equipment Corporation); that EMM Credit held first priority security interest in and to all of its (NCOM's) assets; and that in partial satisfaction of that interest, NCOM had assigned in March 2007 its California Judgment to EMM Credit. Hence, NCOM summarized, "Because the nucleus of this case is the California Judgment, and because the California Judgment has been assigned . . . to EMM Credit Corporation, Plaintiff respectfully requests this Honorable Court [to] exercise its discretion and order that EMM Credit Corporation be substituted as the party Plaintiff for NCOM, Inc., f/k/a NEWCOM, Inc., in this matter."

At a hearing in January 2008, counsel for American National recounted to the court that "on September 27, Plaintiffs filed a motion to substitute the parties for EMM Credit, who is the assignee of the judgment at issue in this case. There's been no order on that –." The court remarked, "I wanted to hear what everybody had to say about that today." Counsel for American National responded, "We have no objection to EMM substituting in as NCOM. We didn't file a written objection and we don't have one now." Consequently, on July 23, 2009, the trial court entered an order

8

expressly finding, inter alia, that no objection to the motion had been filed and thus ruling that the motion is "GRANTED. EMM CREDIT, LLC is hereby substituted for NCOM INC. f/k/a NEWCOM, INC."

On October 4, 2010, American National filed an emergency motion complaining that the substitution had rendered moot counterclaims that it had filed against NCOM on August 5, 2009. As American National explained, NCOM should have procedurally remained a party to the instant case in order to adjudicate those counterclaims. In that motion, American National asked the court, inter alia, to reconsider its substitution order or to allow joinder of NCOM as the "defendant in Counterclaim or a Plaintiff or Involuntary Plaintiff." The trial court denied the motion.

On appeal, American National charges the trial court with "sua sponte removing NCOM from the case completely." OCGA § 9-11-25 (c) provides, in pertinent part, "In case of any transfer of interest, the action may be continued by or against the original party unless the court, upon motion, directs the person to whom the interest is transferred to be substituted in the action *or joined with the original party*."[13] Here, when the trial court explicitly afforded the parties opportunity to be

_____

[13] (Emphasis supplied.)

9

heard on the motion, American National advised the court that it had "no objection to EMM substituting in as NCOM." "It is well established that one cannot complain of a judgment, order, or ruling that [one's] own procedure or conduct procured or aided in causing."[14] Given the foregoing, we find no abuse of discretion in the trial court's rulings.[15]

3. American National contends that the trial court erred in denying its motion in limine that sought to exclude from trial a redacted version of Remington's plea agreement. American National asserts that the document is fraught with hearsay; American National asserts further that Remington was not expected to appear at the trial at the time it was scheduled, and that admission of such document would have deprived it of constitutional rights.

---

[14] *Ga. Dept. of Human Resources v. Phillips*, 268 Ga. 316, 320 (2) (486 SE2d 851) (1997) (footnote omitted); see *Norman v. Ault*, 287 Ga. 324, 329 (3) (695 SE2d 633) (2010) ("A litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal.") (citation and punctuation omitted).

[15] See *Hovendick v. Presidential Fin. Corp.*, 230 Ga. App. 502, 506 (6) (497 SE2d 269) (1998) (explaining that "when a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up a counterclaim by amendment," but whether to allow such a filing falls within the discretion of the trial court). See generally *Sheffield v. Preacher*, 175 Ga. 719 (165 SE2d 742) (1932).

"A trial court's ruling on a motion in limine is reviewed for abuse of discretion."[16] Here, any trial in this case will employ Georgia's new Evidence Code.[17] At the time of the ruling contested here, however, that Code was not yet applicable and thus the trial court's decision was not based thereon. Hence, whether the trial court correctly determined that the evidence was admissible under the former Evidence Code is moot.[18] Under these circumstances, we vacate the evidentiary ruling at issue and remand the case for the trial court to exercise its discretion to consider in the first instance whether the evidence is admissible, given the newly enacted Evidence Code and any other relevant circumstances.[19]

---

[16] *McKissick v. Aydelott*, 307 Ga. App. 688, 692 (2) (705 SE2d 897) (2011) (footnote and punctuation omitted).

[17] Georgia's new Evidence Code "shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date." Ga. L. 2011, p. 99, § 101.

[18] OCGA § 5-6-34 (d) (providing, in pertinent part, "Nothing in this subsection shall require the appellate court to pass upon questions which are rendered moot.").

[19] See *Rivers v. K-Mart Corp.*, ___ Ga. App. ___ (___ SE2d ___) (2013) (Case No. A13A0363, decided May 17) (remanding case on interlocutory appeal so that the trial court could exercise its discretion in deciding whether, under the new Evidence Code, evidence of a party's prior criminal record was admissible).

11

*Judgment affirmed in part, vacated in part, and reversed in part, and case remanded with direction. Branch, J., concurs. Ellington, P.J., concurs in judgment only.*