**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

April 29, 2019

# In the Court of Appeals of Georgia

A19A0291. GOLDEN ISLES CRUISE LINES, INC. v. LOWIE.

MILLER, Presiding Judge.

A Glynn County jury awarded Robert Bruce Lowie $2,236,850.28, in connection with his fall while aboard a gambling ship operated by Golden Isles Cruise Lines, Inc. ("Golden Isles"). Golden Isles appeals, contending that (1) the trial court erred in denying its motion for summary judgment because the one-year contractual limitations period governing Lowie's claims expired before he filed his lawsuit; (2) the jury's verdict was unsupported by the evidence and contrary to law; (3) a new trial is warranted because the trial court required Golden Isles to exhaust each of its peremptory strikes of potential jurors; and (4) the trial court erred by allowing Lowie's trial counsel to make improper closing remarks. Having carefully reviewed the record, we determine that the jury's verdict was not against the weight

of the evidence and that the trial court committed no reversible error. We therefore affirm.

"On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." (Citation omitted.) *Coregis Ins. Co. v. Nelson*, 282 Ga. App. 488, 490 (2) (639 SE2d 365) (2006).

> In reviewing a verdict after the denial of a motion for new trial, we follow well-established principles. Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of the motion for new trial will not be disturbed.

(Citation and punctuation omitted.) *Crump v. McDonald*, 239 Ga. App. 647, 650 (3) (520 SE2d 283) (1999).

Golden Isles operates a boat in Georgia, known as the Emerald Princess 2 (the "boat"). Golden Isles offers various gaming options on the boat, including slot

2

machines, blackjack tables, and poker tables. During the weeks preceding Lowie's fall, a piece of equipment on the boat — the bow thruster — had not been working properly. When the crew members are entering the engine room containing the bow thruster, they must completely unscrew a hatch cover from the floor and set it aside; the hatch cover does not remain connected by any hinges. The floor hatch is square-shaped and measures 22 inches by 22 inches.

On December 16, 2014, the supervisor of the boat's engineering department and two crew members were attempting to "calibrate or fine tune the bow thruster" before sailing later that evening. Before the boat sailed, one of the captains did his "walk-around" to inspect the vessel. He testified that during these inspections, he is "looking for everything" and that this would potentially include an open floor hatch. While inspecting the main deck, the captain saw that the hatch cover had been removed and that the hatch to the engine room was open. Observing the hazard, he "told the engineering guys that were working there to put some chairs around it," and he also told them to have someone "stay there so that no one would fall through the hole."

The practice of having a crew member stand watch at a hazardous site is known as a "man watch." The president of Golden Isles, Louis N. Dyer, Jr., testified that in

3

the maritime business, a "man watch" is used when any kind of maintenance, welding, or pipefitting is underway. He added that it is a safety procedure to ensure that "an accident like this couldn't happen." The engineering department supervisor testified, "we try to keep two people in the hole and one out."

One of the crew members exited the engine room and was "standing man watch" around the hatch. The crew placed a chair and a stool on one side of the hatch and placed another chair and stool on the other side. These chairs and stools, however, were merely seating that would have ordinarily been used by patrons gambling. There were no safety cones around the area, nor was there any yellow tape.

Lowie boarded the boat around six o'clock in the evening. On his way to the cashier's cage located at the front of the boat, Lowie fell approximately ten feet down, into the hatch. The crew member who was standing watch had left his post. When asked whether that specific crew member was doing what he had been asked to do, Dyer responded, "[n]ot at that moment. He – he did and then he didn't." Similarly, when asked whether that crew member had done his job to warn passengers that the hatch cover had been removed, Dyer responded, "[a]t that moment, he did not." Dyer also testified that the mere presence of the chairs and stools was "not as good' as if there had been someone standing watch.

Lowie suffered a head injury and compression fractures of multiple vertebrae in his spine. He underwent various procedures and took an array of medications for pain. Lowie had a permanent spinal cord stimulator implanted, but it failed to provide sufficient pain relief to off-set the side effects, and it was later removed. In October 2016, a neurological surgeon diagnosed Lowie with chronic pain syndrome.[1] Lowie's neurological surgeon testified that there is no "definitive" cure for Lowie's pain, and that he may possibly experience chronic pain for the remainder of his life.

For several months following Lowie's fall, Dyer and Stuart Platt, an insurance claim adjuster for Golden Isles, communicated with Lowie and his wife, Concettina, regarding Lowie's injuries.[2] While Lowie was hospitalized in late December 2014, Dyer told Mrs. Lowie that he had spoken with Platt, and that he had told Platt that he and the Lowies had been friends for "25 to 30" years. Dyer indicated that Platt would "take real good care" of the Lowies. According to Mrs. Lowie, Platt visited her and her husband at their home in January 2015 and said, "I seen the video of Bruce falling in that hole. . . .[T]hat was a nasty accident and it was definitely negligence on

[1] The surgeon's deposition was video-taped, and the tape was played for the jury.

[2] Mrs. Lowie testified during her deposition that Platt communicated with her because her husband was "out of it" as a result of his injuries.

5

[Golden Isles'] part. . . .[W]e're going to take care of you and make sure that everything's done right." She added that Platt told her there was "no need to go out and get an attorney." Likewise, Lowie explained that Platt came to his home, "flat lied," and told him that he did not need a lawyer.

Mrs. Lowie testified of Platt:

he was calling once or twice a week or I was calling him because he sat down and explained to me what we had to do was we had to run it on our insurance with Medicare and Blue Cross Blue Shield and when there's a settlement made that they were responsible for paying Blue Cross and Medicare back, that's the way Stuart Platt put it to me . . . . He said, by law, we had to go through . . . Medicare and Blue Cross Blue Shield so that's what I did and I sent him – and he told me to send him all the bills. He gave me his business card, send him all the bills, all of my out-of-pocket expenses, everything, they would reimburse me. . . . [I]n August he called me he says – when he asked me how Bruce was doing he asked me, he says, well, are y'all ready to settle yet? I said, well, what do you mean on settling? He said, well, I'll have to come and we'll have to do it, you know, face-to-face. I said, well, Stu, I said, that'd be all fine and good I said, but you know, he's not well yet . . . . And that's when I told him we wanted to get another opinion. We [were] waiting to get into Emory because it was hard – it's hard to get in at Emory, so – and I told him that we [were] trying to get in there. He says, well, whatever y'all want to do, wherever y'all want to go, we'll pay for it. We'll take care of it.

Platt also gave the Lowies "an example of a man that fell on a boat deck . . . and they offered the guy $50,000 and the guy didn't think that was enough and he — took them to court and . . . ended up not getting what they offered him, to begin with." In 2015, "a couple months right before summertime," while Mrs. Lowie was at Golden Isles' office, Dyer called her over to speak with him. When Dyer learned that the Lowies had not hired counsel, he thanked Mrs. Lowie and told her, "don't worry about it, we['re] going to take care of you." In both August 2015 and October 2015, Platt asked the Lowies whether they were ready to settle. The Lowies received approximately $1,800 in reimbursement, and, on December 16, 2015, almost a year to the day after the fall, Dyer told the Lowies that they would not receive additional reimbursement because the one-year limitations period, as provided for in the boarding pass, had lapsed.

Lowie sued Golden Isles in March 2016,[3] approximately one year and three months after his fall. The parties do not dispute that Lowie's boarding pass provides that all lawsuits, including personal injury claims, must be filed within one year from the date on which the cause of action arose. In his complaint, however, Lowie

---

[3] As part of this lawsuit, Mrs. Lowie also had a loss of consortium claim. Golden Isles moved to have this claim dismissed, and the trial court granted the motion.

claimed that in the year following his fall, Dyer had telephoned him and his wife at least 70 times, Platt had telephoned them at least 30 times, and both Dyer and Platt had contacted them in person, making representations and engaging in conduct which Lowie alleged estopped Golden Isles from relying on the contractual limitations period as a defense. Specifically, Lowie claimed that Dyer and Platt had repeatedly assured that all of his medical bills related to the fall would be paid and that, in reliance on these representations, he did not file suit. Lowie also filed a motion to compel discovery seeking, inter alia, the production of

> any and all correspondence between [Golden Isles] or any of [Golden Isles'] officers, directors, shareholders, employees or agents of Stuart I. Platt, Platt Marine Services, Inc.'s officers, directors, shareholders, employees or agents . . . in any way related to [Lowie] or the events giving rise to the above captioned-lawsuit.

Lowie made this same request with respect to Golden Isles' supposed communications with other insurance companies that "act[ed] in some way for the benefit" of Golden Isles. Golden Isles, in opposing Lowie's motion to compel, argued that the requested information was protected from disclosure under the work product doctrine and attorney-client privilege. Golden Isles also moved for summary

judgment on Lowie's lawsuit, arguing that the lawsuit was barred by the one-year limitations period as printed on the boarding pass.

Following a hearing, the trial court ordered Golden Isles to produce the requested correspondence for an in camera inspection, after which the trial court found that some of the submitted correspondence was relevant to the issues in the case and turned over copies of "potentially relevant" emails to Lowie's counsel. The trial court also found that portions of Platt's insurance claim file for Lowie were relevant and ordered that a CD and documents from the claim file be turned over to Lowie's counsel.

In August 2017, Golden Isles filed an amended motion for summary judgment. Golden Isles argued that Lowie was bound by the contractual limitations period provided in the boarding pass because he was a VIP member of Golden Isles' business and had received potentially hundreds of similar boarding passes. Golden Isles added that Lowie did not have a valid estoppel argument because neither Golden Isles nor any insurance adjuster working on the company's behalf made any statement regarding settlement after the one-year contractual limitations period ended.

The trial court denied Golden Isles' amended summary judgment motion. The trial court determined that Lowie had offered convincing evidence that he had

actually relied on representations made by Golden Isles or its representatives in deciding not to hire an attorney or file suit and that he had done so to his detriment. The trial court therefore found that Golden Isles was estopped from relying on the limitations period set forth in the boarding pass. The case proceeded to trial, and the jury awarded Lowie $2,236,850.28. The jury assigned 100 percent of the fault to Golden Isles, and the trial court entered a corresponding judgment. After a hearing, the trial court denied Golden Isles' motion for new trial, and this appeal followed.

1. First, Golden Isles argues that the trial court erred in denying its summary judgment motion and in also determining that it was estopped from relying on the contractual limitations period as a bar to Lowie's lawsuit. This argument is unavailing.

First, we note that Golden Isles' "challenge to the denial of its motion for summary judgment has not been rendered moot as a result of the subsequent entry of verdict and judgment." *Nelson*, supra, 282 Ga. App. at 489 (1).

> [I]f the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial, then the denial of the motion is not rendered moot by the verdict and judgment. Under such circumstances, a party may appeal the denial of summary judgment as part of the party's direct appeal from the final judgment, and the denial will be reviewed and determined by this Court.

10

Id. Here, in denying Golden Isles' motion for summary judgment, the trial court only addressed Lowie's estoppel argument against Golden Isles, an issue that was not before the jury. "We therefore may review the denial of the motion under OCGA § 5-6-34 (d)." Id. at 490 (1).[4]

The doctrine of equitable estoppel may be used "to bar inequitable reliance on statutes of limitations." (Citation omitted.) *Keefe v. Bahama Cruise Line, Inc.*, 867 F2d 1318, 1323 (11th Cir. 1989). "The principle — which is based upon the maxim that no man may take advantage of his own wrong — applies with equal force where, as here, the limitations is contractual rather than statutory, there being no essential difference between the two." (Citations omitted.) Id. To successfully invoke the doctrine of equitable estoppel, the late arriving plaintiff must show that he

---

[4] The parties agree that the trial court's decision to apply federal admiralty and maritime law on this issue was proper. See *Daniels v. Stevens*, 171 Ga. App. 192 (1) (318 SE2d 812) (1984) (although lawsuit for cruise passenger's injuries was brought in state court, lawsuit was included in admiralty jurisdiction and the legal rights and liabilities of the defendant were "measurable by the standards of maritime law."); *Curlee v. Mock Enterprises, Inc.*, 173 Ga. App. 594, 595 (1) (327 SE2d 736) (1985) ("If a tort be maritime and cognizable in admiralty, maritime law governs with respect to the rights and liabilities of the parties, without regard to the court in which relief is sought, whether the action be brought in a federal district court or in a state court.").

11

was misled by defendant or its agents so that [he] delayed suit because of (a) an affirmative statement that the statutory period to bring the action was longer than it actually was, or (b) promises to make a better settlement of the claim if plaintiff did not bring suit or (c) comparable representations and conduct.

Id. at 1323-1324. "[T]he constituent elements of estoppel constitute questions of fact, and the [trial] court's findings on these matters must be upheld unless clearly erroneous." Id. at 1323. "A finding of fact is clearly erroneous when the entirety of the evidence leads the reviewing court to a definite and firm conviction that a mistake has been committed." (Citation omitted.) *Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc.*, 565 F3d 1293, 1298 (II) (A) (11th Cir. 2009).

At the outset, we note that the issue in this case is not necessarily whether Golden Isles or its agents (a) told Lowie that the limitations period was longer than it actually was, or (b) promised to make a better settlement of the claim if he did not sue. Rather, our focus is on the "broad third category" which is a "catch-all encompassing all manner of conduct analogous to the rather specific examples set forth in parts (a) and (b)." *Keefe*, supra, 867 F2d at 1324.

The record supports the trial court's findings that Platt told the Lowies that Golden Isles "would take care of them" and that there was no need to hire counsel,

12

and that Lowie relied to his detriment on representations made by Golden Isles and/or its agents when deciding not to hire an attorney or file suit. We are not persuaded by Golden Isles' argument that the trial court relied exclusively on privileged correspondence between Golden Isles and its agents in arriving at this conclusion.[5] The trial court cited both depositions and affidavits in determining that Lowie was misled so that he delayed suit. As discussed above, the record contains extensive testimony concerning protracted representations to the Lowies that they would be entirely "taken care of" financially in association with the fall, without need of a lawsuit. Compare *Burke v. Gateway Clipper, Inc.*, 441 F2d 946, 948-949 (I) (3d Cir. 1971) (injured seaman was not misled into delaying lawsuit where he was never told to not file suit and captain of the vessel only informed him that he would not receive compensation); *Holland v. Norwegian Cruise Lines*, 765 FSupp. 1000, 1003 (N.D. Cal. 1990) (cruise ship passenger was not misled into delaying lawsuit where claims adjuster merely agreed to investigate and negotiate a settlement, and passenger asserted no reason for believing that claims adjuster would provide a satisfactory result).

---

[5] The e-mail correspondence which the trial court referenced in its order intimated that Platt and Golden Isles knew of the limitations period, planned to "stay put" for a year, and took actions to "keep the peace" with the Lowies.

13

In his deposition, Platt also confirmed, "I know they relied on me to get them reimbursed for those medicals." Further, the summary judgment record shows the following exchange between Dyer and Lowie's counsel:

> COUNSEL: How many times during the course of the years following Bruce's fall did you tell Tina or Bruce either on the phone or in person that you were going to take care of them?

> PLATT: I told them I would take care of their receipts, I would reimburse them. I probably would have said I would do whatever I could, to call me if you need anything.

Lowie averred that, but for Platt's and Dyer's conduct, he would have filed suit within one year of the injury date.

Therefore, as to Golden Isles' motion for summary judgment, we determine that when the record is viewed in the light most favorable to Lowie as the non-movant, the trial court properly denied Golden Isles' summary judgment motion on the basis of the contractual limitations period. Regarding the trial court's ultimate determination that Golden Isles was estopped from relying on the limitations period, "[t]he record supports the[] factual findings by the [trial] court, and [Lowie] therefore has proved the elements needed to create an estoppel." *Keefe*, supra, 867 F2d at 1324.

2. Next, Golden Isles argues that the jury's verdict is wholly unsupported by the evidence and contrary to law. In Golden Isles' view, the verdict should be set aside because the jury wrongfully attributed 100 percent of the fault to Golden Isles. This enumeration is not meritorious.[6]

"A trial court may grant a motion for new trial if, in the exercise of its discretion, it finds that a jury's verdict was against the weight of the evidence. OCGA § 5-5-21. However, when a trial court denies such a motion, the appellate court does not have the discretion to grant a new trial on that ground. We can only review the evidence to determine if there is any evidence to support the verdict." (Citation omitted.) *Williamson v. Strickland & Smith, Inc.*, 263 Ga. App. 431, 433 (1) (587 SE2d 876) (2003). Thus, "[t]he trial court's denial of a motion for new trial on evidentiary grounds will be reversed on appeal only if there is *no* evidence to support the verdict." (Citation omitted.) Id. We are also mindful that

---

[6] "Under maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F3d 1275, 1279-1280 (11th Cir. 2015). To prevail on his negligence claim, Lowie had to prove that (1) Golden Isles had a duty to protect him from a particular injury; (2) Golden Isles breached that duty; (3) the breach actually and proximately caused his injury; and (4) he suffered actual harm. Id.

15

questions of negligence and diligence and of cause and proximate cause and whose negligence constituted the proximate cause of the plaintiff's injuries are, except in plain, palpable and indisputable cases, solely for the jury, and the courts will decline to decide such questions unless reasonable minds cannot differ as to the conclusions to be reached.

(Citation and punctuation omitted.) *Hayes v. Crawford*, 317 Ga. App. 75, 79 (730 SE2d 26) (2012).

According to Golden Isles, there were unrebutted indices that the hatch opening was large, visible, and smelled of diesel, all of which Lowie should have observed or detected. Lowie testified at trial, however, that he did not see any light coming from the open hatch, he did not see the hatch, and he did not recall smelling any diesel fuel in the area. Instead, he explained that he was walking along, paying attention to where he was going, and "the next thing [he] knew, [he] was gone." Although Golden Isles posits that Lowie was suffering from impaired vision and dizzy spells at the time of the incident, Lowie testified that he can see, that he was not experiencing any dizzy spells at the time of the fall, and that he did not recall hearing any noise of men working on the bow thruster. He testified that although it was not "pitch dark" outside, it was dark inside the boat because it has dark, tinted windows. While another person avoided the hatch seconds before Lowie fell, the record also

16

shows that that individual was a technician who had been working on the slot machines and that he had been walking around the hatch all day.

Lastly, Golden Isles makes much of the fact that Lowie was a frequent patron and was in the same area as the hatch many times before. Simultaneously, however, the testimony at trial showed that the hatch is ordinarily covered by carpet, and, when in place, the hatch cover is flush with the flooring. In fact, the record contains the following exchange at trial, between Lowie's counsel and Dyer.

> COUNSEL: And so if somebody is on that ship and that hatch cover is closed and the carpet is on it, a passenger wouldn't even know there was a hatch down there at all, would they?

> DYER: Correct. And, during trial, a photograph of the hatch cover was shown to the jury.

In arguing that the jury wrongfully assigned no fault to Lowie, Golden Isles essentially invites us to reweigh the evidence presented at trial. "However, an appellate court can only review the evidence to determine if there is any evidence to support the verdict. This [C]ourt does not reweigh the evidence, as the finder of fact, in this case the jury, is the final arbiter of the weight of the evidence and the credibility of witnesses." (Citation omitted.) *Auto-Owners Ins. Co. v. Dolan*, 342 Ga.

App. 179, 183 (3) (803 SE2d 104) (2017); *Stubbs v. Harmon*, 226 Ga. App. 631, 632 (1) (487 SE2d 91) (1997) ("[T]his Court will not substitute its judgment for that of the jury and will neither weigh evidence nor determine witness credibility."). Given the record before us, it was the jury's prerogative to determine whether to attribute any fault to Lowie. Because the record contains sufficient evidence for the jury to have attributed all the fault to Golden Isles, the trial court properly denied Golden Isles' motion for new trial on evidentiary grounds.

3. Golden Isles contends that the trial court committed reversible error in requiring that it use all six of its peremptory strikes when selecting the jury. We discern no such error.

Under OCGA § 15-12-122 (b), which pertains to civil actions in the superior courts, "each party may demand a full panel of 24 competent jurors from which to select a jury. . . . [T]he parties or their attorneys may strike alternately, with the plaintiff exercising the first strike, until a jury of 12 persons is impaneled to try the case." Although Golden Isles only sought to exercise three of its six strikes, the trial court determined that Golden Isles was required to use all its strikes in order for the twelve-person jury to be empaneled.

Assuming, without deciding, that Golden Isles is correct that it was not required to use all six strikes, Golden Isles has not demonstrated any harm. See *McKissick v. Aydelott*, 307 Ga. App. 688, 694 (3) (705 SE2d 897) (2011) ("In order to constitute reversible error, both error and harm must be shown.") (citation omitted).[7] Golden Isles only surmises that there is a "reasonable probability" that selecting a different set of jurors may have changed the result of the trial. That is not sufficient to demonstrate harm. "A party to a lawsuit has no vested interest in having any particular juror to serve; he is entitled only to a legal and impartial jury." *Hill v. Hosp. Auth. of Clarke County*, 137 Ga. App. 633, 636 (I) (1) (a) (224 SE2d 739) (1976); *Guoth v. Hamilton*, 273 Ga. App. 435, 437 (1) (615 SE2d 239) (2005) (noting that the jury "must be free from bias regarding the trial's outcome."). Because Golden Isles does not identify any harm from using all of its peremptory strikes, this

---

[7] Golden Isles' reliance on *Stolte v. Fagan*, 291 Ga. 477 (731 SE2d 653) (2012) is unavailing. In *Stolte*, the Supreme Court of Georgia held that a civil litigant is entitled to the removal of *unqualified* jurors before exercising her peremptory strikes, and so if a litigant appeals a trial court's refusal to excuse an allegedly unqualified juror, she need not show that she used all her peremptory strikes as a prerequisite for establishing harm. Id. at 478-479 (1). Moreover, the Supreme Court recently disapproved *Stolte* for this very principle, holding that "a defendant is not presumptively harmed by a trial court's erroneous failure to excuse a prospective juror for cause simply because the defendant subsequently elected to remove that juror through the use of a peremptory strike." *Willis v. State*, 304 Ga. 686, 707 (11) (a) (820 SE2d 640) (2018).

enumeration provides no grounds for reversal. See *Hill*, supra, 137 Ga. App. at 636 (I) (1) (a) (no reversible error in trial court's decision in jury selection because "the court's decision could not be considered harmful"). Compare *Guoth*, supra, 273 Ga. App. at 440 (new trial required because trial court erroneously declined to excuse a biased juror for cause and appellant had exhausted all of his peremptory challenges).

4. Lastly, Golden Isles argues that the trial court erred in denying its motion for new trial because Lowie's counsel violated the "golden rule" by asking the jury to put themselves in Lowie's shoes when assessing the case. We are not persuaded.

"The so-called 'Golden Rule' argument urges the jurors to place themselves in the position of plaintiff or to allow such recovery as they would wish if in the same position." *Myrick v. Stephanos*, 220 Ga. App. 520, 522 (4) (472 SE2d 431) (1996). Lowie's trial counsel did neither. During closing argument, Lowie's counsel stated, "I hope — I don't wish any ill will on anybody, of course, but I hope that some of you had some pain in your life so you know the value of pain. I hope that some of you have suffered injustice in your life." Lowie's trial counsel did not request the jurors to put themselves in Lowie's position or otherwise invite them to assume "the subjective view of one of the litigants." *Naimat v. Shelbyville Bottling Co.*, 240 Ga. App. 693, 698 (4) (524 SE2d 749) (1999). See *Myrick*, supra, 220 Ga. App. at

20

522 (4) (the golden rule argument "is improper because it asks the jurors to consider the case, not objectively as fair and impartial jurors, but rather from the biased, subjective standpoint of a litigant"). Thus, the trial court properly denied Golden Isles' motion for new trial on these grounds.

In sum, the trial court properly denied Golden Isles' summary judgment motion and determined that Golden Isles was estopped from relying on the contractual limitations period as a bar to Lowie's lawsuit. Also, the jury's verdict was supported by the evidence, and the trial court committed no reversible error.

*Judgment affirmed. Rickman and Reese, JJ., concur.*